[Crim. No. 11486. Second Dist., Div. Four. Aug. 11, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. LEROY WIL-
SON MITCHELL, Defendant and Appellant.

Leroy Wilson Mitchell, in pro per., Charles M. Berg, under appointment by the District Court of Appeal, and Donald F. Roeschke for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—Defendant entered pleas of not guilty and not guilty by reason of insanity to two counts charging him, respectively, with possession of marijuana and with planting and cultivating marijuana, each a violation of section 11530 of the Health and Safety Code. Defendant admitted that he had suffered two prior felony convictions. A jury found him guilty as charged. After a jury waiver in the separate trial on the issue of his sanity, the court found that he was sane at the time of the commission of the offenses. Probation and new trial motions were denied and defendant was sentenced to prison on each count, the terms to run concurrently. This is an appeal from the judgment entered.[1]

Defendant raises a number of contentions only one of which we feel called upon to discuss at any length. The principal thrust of defendant's argument on appeal is directed to what in effect was his sole defense at the trial on the issue of his guilt. He argued then and he contends now that his use of marijuana was in accordance with his religious beliefs, and therefore, he had a constitutionally protected right to possess and use the narcotic. We conclude, for the reasons hereinafter set out, that this was no defense.

---

[1] At the time defendant was sentenced in this case, he was found to be in violation of his probation granted after a previous conviction; he also was sentenced to state prison for that offense, the sentences being ordered to run concurrently. Defendant's notice of appeal is stated to be from ''the judgments entered.'' However, he has raised no issue respecting the judgment entered in the parole violation case, and consequently, we consider his appeal in that case to be abandoned.

Defendant also contends, without merit, that the marijuana found in his possession was the product of an illegal search, that evidence of his confessions to the police was improperly admitted, and that the evidence established that he was legally insane at the time of the commission of the alleged offenses.

Sheriff's detectives Honey and Dewhirst went to defendant's residence in response to the request of Mrs. Mitchell, defendant's wife. This was early on the afternoon of January 24, 1965. Mrs. Mitchell and defendant's two children were the only persons at home at the time. She told the officers that defendant was smoking marijuana nearly every night; he had been using narcotics for some time; that she wanted to do something about it. She showed them a pipe which she said he used to smoke marijuana.

Shortly after they had returned to the sheriff's station, the officers again received a call from Mrs. Mitchell. This time she stated that she had found some marijuana seeds in a cup on their back porch and had also located a marijuana plant which her husband had planted. Honey and Dewhirst immediately went back to the residence and were admitted by Mrs. Mitchell. She showed them a cup hidden under a mat on the back porch. The cup contained a number of seeds. The officers were then led to a spot outside in the yard, and Mrs. Mitchell pointed out a green leafy plant which Detective Honey determined was marijuana.

At about 7 p.m. that evening the officers came back to the vicinity of defendant's house accompanied by two fellow officers. From a nearby vantage point they waited for a prearranged signal from Mrs. Mitchell indicating that defendant was in the process of smoking marijuana. She told them the door would be unlocked to permit their entry. The signal was given by Mrs. Mitchell at about 7:35 p.m. and the officers entered the house through the unlocked porch door. As they entered detective Honey smelled burning marijuana. Defendant was seated on a mattress in the living room with a pipe in his mouth playing a guitar. The officers identified themselves and told him that he was under arrest.

Honey immediately advised defendant that he did not have to say anything, that he had a right to an attorney, and that anything he did say could be used against him. Upon being asked if he understood what the officer had said, defendant replied "Yes." He then freely and voluntarily said "It's a cool bust, Man, like put the heat away." (In the jargon common to narcotics users, this meant "It's a good arrest, put

the guns away.'') The officers holstered their guns. Upon being asked where he kept the narcotics, defendant told the officers he had a box of marijuana under the house covered with a pice of wood and dirt. He showed them this box and its contents. He then showed them the marijuana plant in the yard, explaining that he had planted it along with some others, which he had later removed and smoked when he had had some friends over. Defendant then led the officers to a small skiff in the yard. From inside a live bait tank he removed a jar containing approximately 1,500 seeds. He told them that, if he had known he was going to be ''busted,'' he would have gone to the mountains and planted these seeds and in eight months he would have been a millionaire. Defendant also admitted that the cup of seeds under the mat on the back porch contained marijuana and also belonged to him.

Defendant was highly cooperative with the officers from the time they entered the house. As they left defendant told his wife, ''It's all right, honey. I know you had to do it.'' (The plant and the contents of the pipe, cup, box and jar were later tested and determined to be marijuana.)

Defendant was interviewed at about 9 p.m. that night by Detective Honey at the local sheriff's department. The officer again advised defendant of his constitutional rights before asking him any questions. Defendant again stated he understood his rights. Detective Honey then went through the day's events step by step and defendant again freely admitted that all the items found belonged to him.

Defendant, testifying in his own behalf, readily admitted that he was growing and using marijuana; he, however, was smoking it pursuant to a religious belief. He quoted at length various passages from the Bible and argued that, as a ''herb of the field,'' its use was ''a divine right of natural inheritance.'' He then said:

''My contentions is—my belief is that the church is as yet unaware of itself. The mystery of the church has not been cleared up yet where they can advance to a much more meaningful position, especially as regards raising the young, and I believe that our young people have a right to expect proper and meaningful and very lucid and illuminative guidance from us.

''There is this song that is so important to us. This song that we sing every day in so many words of sound, and if we could hear the song better, the sound of our meaningful creation, especially concerned with the inheritance of the coming

generation. It is like—the contention is that not so much that a man has to be a member of this church or that church, or another church for a special religion that has to do with the justification of smoking marijuana, but that one has the right to worship as he sees fit, and I have learned from experience that the—the writing of a people—sometimes when one has the ability to translate one's own knowledge can be very much like a draughtsman or somebody sitting at a drawing board about to build some new machine and that I believe that what our young people today are trying to make us aware of is that they want to be able to stand and receive these blessings without necessarily being designated to a process of time. It is wonderful that we can invent these various things, but there is a great deal of importance also, on maintaining our ability to comprehend the essential attributes and the essential nature of a well coordinated and well balanced society.

"I hope that I will have an opportunity to speak with the Elders of the churches and things like that to perhaps bring some of them out of the idea of sectarian worship, or as religions prevailing with the idea of religion itself, and rather realize these things for their meaningful value and bring them up to date.

"I have seen a lot of young men exposed to the idea of guilt—and having completely circumvented that experience myself—and realized that is where the necessity lies. I believe in the right to life, liberty and pursuit of happiness probably has a great deal to do with some of the things that we are concerned with today.

"I have heard the problems of marijuana discussed many times and it has come to my attention that actually the only problem that we are having with marijuana is that young people are being faced with the attitude of criminality and, as I say, I hope that I will have the opportunity to communicate with the churches about this, because it is my belief, in plain English that the church should make a very definite and open stand as being a midwife of reason and that our young people are fighting now for the availability to actually intelligently comprehend the situations which confront them."

Defendant acknowledged on cross-examination that he was not a member of any organized religion. When asked whether his smoking of marijuana was pursuant to a religious practice, defendant stated: "In the sense that I believe that religion is related to law or constitutionality, I was exercising freedom in my own home to smoke something actually better than

tobacco." His religious ritual was, "Get up in the morning and have breakfast, lunch at 12:30, evening meal, say between 6:00 and 7:00 and a pipe of marijuana about 8:00 or 9:00."

Initially we dispose of three contentions raised in defendant's behalf by his court-appointed counsel.[2]

We find no merit in the urging that an illegal search and seizure took place. As the facts demonstrate the officers went to defendant's home at the invitation of his wife, who, as a joint occupant then on the premises, clearly had the authority to consent to their entry. The contraband observed by the officers in and about the residence was not discovered as the result of a search conducted by them, but was pointed out to them either by defendant's wife or by defendant himself.

Also without merit is the argument that evidence of defendant's confessions should not have been introduced because he was not effectively advised of his right to counsel. The evidence shows otherwise. The record fully supports the finding that defendant waived his rights to counsel and to silence in accordance with the requirements of *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. The more strict requirements of *Miranda* v. *Arizona*, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694], do not apply to trials which commenced prior to June 13, 1966. (*Johnson* v. *New Jersey*, 384 U.S. 719 [86 S.Ct. 1772, 16 L.Ed.2d 882].)

Three doctors trained in the field of psychiatry were called to testify at the separate trial on the issue of defendant's sanity. All three testified they had examined defendant and were of the opinion that he was legally sane at the time of the commission of the crimes charged. No other evidence was introduced. This being so, we are at a loss to see on what basis it can be contended that the evidence was insufficient to support the finding of the court that defendant was legally sane.

In support of the contention that because defendant considered the smoking of marijuana to be a "religion," his prosecution for using it was an unconstitutional interference

---

[2]At the trial defendant insisted that he be allowed to represent himself. Counsel originally appointed to represent him was permitted to remain at his side to advise him at any point he sought advice. In this appeal defendant has filed a brief, in propria persona, in which, as at the trial, he raises only the single point that the smoking of marijuana was a constitutionally protected part of his religion. His appointed counsel in addition to this contention raises the several other points mentioned.

with his right to freedom of religion, principal reliance is placed on the case of *People* v. *Woody*, 61 Cal.2d 716 [40 Cal.Rptr. 69, 394 P.2d 813]. The defendants in *Woody* were members of the Native American Church, a religious organization of Indians. The central event in the practice of their religion consisted in the use of peyote in quantities sufficient to put them into an hallucinatory state. Contrary to defendant's theory, the *Woody* case does not hold that any criminal act is excusable if committed in the practicing of a sincerely held religion. Rather, the *Woody* decision weighs two values: the importance of preventing the use of peyote and the necessity of its use in the exercise of a bona fide religion. It was stipulated in *Woody* that the use of peyote by the Indians was a central part of their religious ceremony. The evidence also showed that such use of peyote, under the safeguards prescribed by the church, had no antisocial consequences and that the danger of misuse of the substance, under improper claim of religious immunity, was minimal. In the case at bench no such showing has been made.

Defendant here simply claims the privilege of growing and smoking marijuana in his home. The control of narcotics, including marijuana, has been the subject of repeated study by the Legislature and by a variety of public bodies whose findings have been made available to the Legislature (see, e.g., Narcotics Addiction, Report to Attorney General Edmund G. Brown by the Citizens Advisory Committee to the Attorney General on Crime Prevention, March 26, 1954). On the basis of this knowledge and in the exercise of its constitutional power, the Legislature has seen fit to declare it a felony both to grow and to possess marijuana. There is not the slightest evidence in the record that the Legislature's determination on this subject is not a proper one. Defendant's case rests solely upon his personal opinion that marijuana is beneficial to him, an opinion which does not constitute evidence of the fact.

Moreover, defendant has offered no evidence that his use of marijuana is a religious practice in any sense of that term. In defendant's discourse to the jury he did refer to the Bible and to the practices of some Hindus, but in essence he was expressing only his own personal philosophy and way of life. He clearly does not bring himself within the principle of constitutional law which was so carefully delineated in *Woody, supra.*

Since we have concluded that the record of this trial raises no issue as to the exercise of religion, it is unnecessary to

review the instructions which the court gave to the jury upon this subject. Defendant was not entitled to have the issue submitted to the jury at all.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied August 31, 1966.