[Crim. No. 9137. First Dist., Div. Two. Aug. 25, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK N. WERBER, Defendant and Appellant.

COUNSEL

Vincent Hallinan, Terence Hallinan, Philip Scott Ryan, Garry, Dreyfus, McTernan & Brotsky and Benjamin Dreyfus for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward P. O'Brien and John T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KANE, J.—Defendant appeals from a judgment entered upon jury verdicts convicting him of cultivation and possession of marijuana.

### Legality of Arrest and Search

Appellant first challenges the lawfulness of his arrest and the search of his residence, contending that the arresting officers lacked

probable cause, failed to comply with Penal Code section 844, and that the search was neither incident to his arrest nor reasonable in scope.

██ At the outset respondent claims that appellant is precluded from seeking direct review of the lawfulness of the search because this court has already denied without opinion his petition for writ of mandate upon the same issue. (Werber v. Superior Court, County of Marin, 1 Civ. No. 26656, pet. den. May 26, 1969, hg. den. June 25, 1969.) Appellant responds that the absence of any indication that this court fully considered the merits of the issue on the denial of his writ does not preclude direct review on appeal. Authority directly in point, supports appellant's position.

"Under the statute [Pen. Code, § 1538.5] a defendant is entitled to make only one pretrial motion to suppress evidence in the superior court and if it is denied his only remedy is, within 30 days, to seek a writ of mandate or prohibition from this court; *if he is unsuccessful and the evidence sought to be suppressed is used against him resulting in conviction he may further pursue his remedy by appeal from the judgment upon which further review of the validity of the search or seizure may be had.*" (*People* v. *Superior Court* (1970) 10 Cal.App.3d 477, 481 [89 Cal.Rptr. 223], hg. den. (italics added). To same effect: *People* v. *Dubose* (Apr. 23, 1971) 17 Cal.App.3d 43, 47 [94 Cal.Rptr. 376].)

In view of these cases as well as the statute itself,[1] the holding in the case relied upon by respondent, *People* v. *Vega* (1970) 12 Cal.App.3d 970 [91 Cal.Rptr. 167], should be limited to situations where, as there, the appellate court disposition of a pretrial petition for an extraordinary writ is accompanied by a written opinion demonstrating full consideration of the merits of the issue. The absence of such demonstration in the present case entitles appellant to a review of the validity of the search of his premises.

Before discussing the arrest and search issue, however, we point out that our review must be confined to the evidence presented at the special suppression hearing. (*People* v. *Hubbard* (1970) 9 Cal.App.3d 827, 832 [88 Cal.Rptr. 411], hg. den.)

Penal Code section 1538.5 was adopted in order "to reduce the unnec-

---

[1]Subdivision (i) of section 1538.5 provides that an indicted defendant "shall have the right to renew or make" a motion to suppress evidence "in the superior court at a special hearing" held prior to trial and that "any review thereafter desired by the defendant prior to trial shall be by means of an extraordinary writ of mandate or prohibition filed within 30 days after the denial of his motion at the special hearing." Subdivision (m) provides that a defendant "may seek further review of the validity of a search or seizure on appeal . . . providing that at some stage of the proceedings prior to conviction he has moved for the return of property or the suppression of the evidence."

essary waste of judicial time and effort involved in the prior procedures, whereby search and seizure questions could be repeatedly raised in criminal proceedings." (*People* v. *Superior Court* (1971) 4 Cal.3d 605, 610 [94 Cal.Rptr. 250, 483 P.2d 1202].)

■ The rule is now settled that a Penal Code section 1538.5 motion which is denied at a superior court pretrial suppression hearing cannot be renewed. However, a new motion to suppress "based upon grounds either unavailable or unknown to defendant at the time his prior motion was denied" can be made at or during trial. "Thus, for example, if there occurred an intervening change in the applicable law or the discovery of new evidence in support of suppression, the trial court could entertain a new motion based upon such grounds." (*People* v. *Superior Court, supra,* 4 Cal.3d at p. 611.)

■ Here, the scope of the search was not contested at the suppression hearing, and appellant did not present a "new" motion to suppress at trial. The record further demonstrates no basis upon which any new motion to suppress could have been made.[2]

### Evidence at Suppression Hearing

On the evening of October 14, 1968, at a motel located in Marin County, numerous law enforcement officials loaded several bags containing marijuana into the trunk of a vehicle driven by one Stan Mulligan. They then followed Mulligan as he drove to appellant's residence. Mulligan entered appellant's driveway at about 8 p.m.; the officers remained concealed near the entrance to the driveway.

Five or ten minutes later Mulligan left the residence and, by prearrangement, drove to one officer's parked vehicle. Agent Steven Armenta of the California Bureau of Narcotic Enforcement testified that he and other officers surveilling appellant's residence then received a radio communication from this officer informing them that the bags of marijuana had been de-

---

[2]Appellant concedes, as he must, that the limitations imposed by *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034] apply only to searches occurring after June 23, 1969 (*People* v. *Edwards* (1969) 71 Cal.2d 1096, 1107 [80 Cal.Rptr. 633, 458 P.2d 713]) and therefore not to the search in question occurring on October 14, 1968. However, at oral argument, appellant suggested that despite the nonretroactive effect of *Chimel,* a later United States Supreme Court decision, *Vale* v. *Louisiana* (1970) 399 U.S. 30 [26 L.Ed.2d 409, 90 S.Ct. 1969], applying pre-*Chimel* standards, vitiates a search such as the one before us. We do not agree. *Vale* represents no departure whatsoever from the pre-*Chimel* rules; rather, the majority in *Vale* simply concluded that the search there did not meet the test of being " ' "substantially contemporaneous with the arrest and is confined to the *immediate* vicinity of the arrest," ' " nor did the search fall within certain delineated exceptions to the test.

Thus, the question of the scope of a search has always been a ground available to a defendant whether the case is considered in a pre-*Chimel* or post-*Chimel* context.

livered. A short time later Armenta and Agent John Molittieri of the United States Bureau of Customs approached appellant's residence.

Armenta testified that the front door of the house was open approximately six to eight inches, that Molittieri banged on the side of the door or house and called out appellant's name, and that appellant could be seen in a den inside the house. Armenta said appellant looked toward the door, responded to Molittieri's call by saying, "Yes," then stood up and came to the door. Armenta testified that Molittieri displayed his credentials, identified himself, and told appellant he was under arrest for violating federal narcotics laws.

Armenta stated that at that time Molittieri was standing "just outside" the threshold of the front door and that appellant was standing just inside the doorway. Armenta stood immediately behind Molittieri and displayed his badge. Molittieri then took appellant's arm and walked with him into the den area.

This version of events was supported by the testimony of Marin County Undersheriff Sidney Stinson.

Armenta testified that he and Molittieri accompanied appellant into the den, where one Judith Sloper and two other persons were present. Stinson entered the residence a few seconds later. Armenta then proceeded to inspect the other rooms inside the house for other occupants, walked outside into the garage area, and reentered the house a few minutes later. The officers subsequently discovered various quantities of marijuana and narcotic paraphernalia in assorted containers located inside the house in a hall closet, a rear bedroom and the den.[3] None of the officers possessed search or arrest warrants.

The version of the events described by prosecution witnesses differed sharply from that described by defense witnesses. Appellant testified that about five minutes after closing the unlocked front door of his residence, three or four law enforcement officers entered his house through the front door without knocking, proceeded to the den located approximately 10 feet away, where he was visiting with friends, called out his name, and told him he was under arrest for smuggling marijuana and violating federal narcotics laws. Miss Sloper testified that she observed Agent Molittieri open the front door and lead other officers into the residence without knocking.

The circumstances preceding the arrest of appellant were described at the suppression hearing by Agent Armenta. He testified that on the morning of October 12, 1968, he met with other law enforcement officials at a

---

[3] Appellant was not prosecuted in this case for possession of the bags of marijuana.

motel in Marin County. At that meeting he spoke with United States Customs Bureau Agent Glazner, who told him that on October 11, near Laredo, Texas, he and another agent had arrested Stan Mulligan and another man named Barrett for smuggling approximately 250 pounds of marijuana across the Mexican border. Glazner told Armenta that Mulligan and Barrett said they had purchased the contraband with funds supplied by appellant and were to deliver it to appellant in Marin County. Glazner also told Armenta that he and another agent had accompanied Mulligan and Barrett with the marijuana from Texas to Marin County. Armenta stated he then observed several bags containing what appeared to be marijuana and met Mulligan and Barrett.

Armenta further testified that Molittieri told him at the motel that Mulligan had telephoned appellant that day and that appellant had asked that the marijuana be delivered.

Finally, Armenta testified that on the evening of October 14, Molittieri told him at the motel shortly before appellant was arrested that Mulligan had again telephoned appellant that evening with respect to delivery of the marijuana. Armenta said he observed Molittieri enter a room at the motel with Mulligan, saw the door close, and that after a short time, Molittieri came out of the room and related Mulligan's telephone conversation with appellant.

The record of the suppression hearing contains abundant evidence supporting the lawfulness of the arrest and the search. ■ The reasonable cause which justifies the arrest of a person without a warrant (Pen. Code, § 836) requires the existence of facts which would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. (*People* v. *Fein* (1971) 4 Cal.3d 747, 752 [94 Cal.Rptr. 607, 484 P.2d 583]; *Remers* v. *Superior Court* (1970) 2 Cal.3d 659, 664 [87 Cal.Rptr. 202, 470 P.2d 11].) This belief may be based upon information received from an untested informant "if corroborated in essential respects by other facts, sources or circumstances." (*Fein*, p. 752.)

■ The information furnished by Mulligan in the present case was sufficiently corroborated to raise a reasonably honest and strong suspicion of appellant's guilt. First, rather than being an unsolicited provider of information about the criminal activity of others, Mulligan was arrested as an actual participant in a crime involving the very contraband with which appellant was implicated.[4] Armenta learned of appellant's participation

---

[4]Although this factor alone does not provide sufficient evidence of reliability to constitute reasonable cause for arrest (*People* v. *Gallegos* (1964) 62 Cal.2d 176, 179

from the federal agent who arrested Mulligan and observed the seized bags of marijuana and Mulligan at the motel prior to the arrest.

Armenta then observed the marijuana being loaded into Mulligan's vehicle after being told by Agent Molittieri that Mulligan had twice spoken to appellant with respect to delivery of the contraband. This information from Molittieri provided a considerable indication of Mulligan's reliability as an informer. (*People* v. *Marquez* (1968) 259 Cal.App.2d 593, 599 [66 Cal.Rptr. 615], cert. den. 393 U.S. 955 [21 L.Ed.2d 367, 89 S.Ct. 386].) That Armenta subsequently observed Mulligan proceed by prearrangement to appellant's residence and leave shortly thereafter, and then received information by radio communication from another officer in touch with Mulligan that the contraband had been delivered, further supported the trustworthiness of Mulligan's information.

Appellant relies upon cases holding that information from an untested informant cannot be corroborated solely by other statements of the informant. (*People* v. *Cedeno* (1963) 218 Cal.App.2d 213, 222 [32 Cal. Rptr. 246]; *People* v. *Stewart* (1966) 241 Cal.App.2d 509, 514 [50 Cal. Rptr. 630].) In the present case, however, it may reasonably be inferred that Molittieri ascertained that Mulligan had in fact called appellant and that the officer contacted by Mulligan after the visit to appellant's residence ascertained that the marijuana had been delivered. The record thus contains ample circumstances corroborating the information provided by Mulligan. We conclude therefore that the arrest of appellant was proper.

 The record also contains ample evidence that the arrest was accomplished by compliance with the provisions of Penal Code section 844. Armenta and Stinson testified that Molittieri stood outside the open front door of appellant's residence and knocked loudly, called out appellant's name, then identified himself and informed appellant he was under arrest for violating federal narcotics laws. This conduct fully satisfied the statutory requirements of demanding admittance and explaining the purpose for admittance.[5] (*Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 319-320 [82 Cal.Rptr. 348, 461 P.2d 62]; *People* v. *Hall* (1971) 3 Cal.3d 992, 997-998 [92 Cal.Rptr. 304, 479 P.2d 664].) That this testimony was directly contradicted by the testimonies of appellant and Miss Sloper

---

[41 Cal.Rptr. 590, 397 P.2d 174]; *People* v. *Scoma* (1969) 71 Cal.2d 332, 338, fn. 7 [78 Cal.Rptr. 491, 455 P.2d 419], and cases cited), it certainly furnished more of an indication that Mulligan's information was trustworthy than if it had been received from an anonymous, unsolicited source.

[5] As counsel for appellant acknowledged at the suppression hearing: "THE COURT: . . . you would have to agree, I think, that if the facts are as Agent Armenta testified then the Section [844] was complied with. MR. GARETY [counsel for appellant]: Yes, your Honor."

presented a factual question for the trial court, which was resolved against appellant.

### Religious Freedom Defense

■■■ Appellant introduced at trial considerable evidence respecting his use of marijuana as a religious practice, including his own testimony and that of various acquaintances and authorities on the subject. Thereafter the trial court ruled that appellant's "possession, cultivation and use of marijuana does not constitute a religious practice within the constitutional concept of religion" and ordered all testimony respecting the matter to be stricken from the record. Appellant challenges this ruling and contends that the record contained sufficient evidence of an infringement upon the free exercise of his religion to necessitate a determination thereof by the jury.

This contention, however, has substantially been answered against appellant by two California decisions interpreting *People* v. *Woody* (1964) 61 Cal.2d 716 [40 Cal.Rptr. 69, 394 P.2d 813] and *In re Grady* (1964) 61 Cal.2d 887 [39 Cal.Rptr. 912, 394 P.2d 728].[6]

The court in *People* v. *Collins* (1969) 273 Cal.App.2d 486 [78 Cal. Rptr. 151], rejected a claim that the use of marijuana for religious purposes pursuant to an honest religious belief was protected as an exercise of religious freedom, noting that unlike the situation in *Woody*, the defendant therein "does not worship or sanctify marijuana," but rather "employs its hallucinogenic biochemical properties" to reach desired capacities for communication and apperception. (Pp. 487-488.) A similar claim of religious protection for the use of marijuana was rejected in *People* v. *Mitchell* (1966) 244 Cal.App.2d 176 [52 Cal.Rptr. 884], where the court ruled that the defendant had failed to demonstrate the presence of safeguards against antisocial consequences or misuse as shown in *Woody* or the authentic religious nature of his usage. (P. 182.)

Appellant argues that these cases are distinguishable factually from the record in the present case. ■ Notwithstanding any factual dis-

---

[6]Several federal and state courts outside of California have upheld statutory proscriptions upon the use of marijuana imposed against persons whose use of it was assumed to constitute sincere expressions of religious practice. (*United States* v. *Kuch* (D.C. 1968) 288 F.Supp. 439, 445-446 [35 A.L.R.3d 922]; *Leary* v. *United States* (5th Cir. 1967) 383 F.2d 851, 859-861, revd. on other grounds, 395 U.S. 6 [23 L.Ed.2d 57, 89 S.Ct. 1532]; *United States* v. *Hudson* (5th Cir. 1970) 431 F.2d 468, 469, cert. den. 400 U.S. 1011 [27 L.Ed.2d 624, 91 S.Ct. 575] ["the use of drugs as part of religious practice is not constitutionally privileged."]; *State* v. *Bullard* (1966) 267 N.C. 599 [148 S.E.2d 565, 568-569]; 35 A.L.R.3d 939, 944, and authorities cited.)

tinctions,[7] their basic legal message is the same: The state's prohibitions against the use of marijuana express sufficiently compelling and lawful state interests to be upheld against a claim of interference with the exercise of religion in the absence of evidence that marijuana, as peyote in *Woody,* itself constituted for the particular defendant an object of worship essential to an exclusively religious ritual. (See also *Allinger* v. *City of Los Angeles* (1969) 272 Cal.App.2d 391, 396 [77 Cal.Rptr. 257]; *People* v. *Wright* (1969) 275 Cal.App.2d 738, 740 [80 Cal.Rptr. 335].)

The evidence in the present case, though considerably more extensive in scope and apparently in volume than in *Collins* and *Mitchell,* fails to meet these necessarily stringent standards. At most the testimony of the various authorities and acquaintances presented on behalf of appellant substantiate that his use of marijuana beginning in 1965 led in part to a self-described religious experience and a fundamental change in lifestyle. Similarly, the testimony of appellant indicated the occurrence of an emotional reaction to his use of marijuana and a new awareness of various unfamiliar and abstract concepts.[8]

Absent from the record, however, is any indication that marijuana had itself become the recipient of appellant's prayer or that its use had been limited to strictly religious ritual. Rather, it appears merely to have served as the means by which appellant ascertained particular states of mind characterized by him as religious. Such conduct, even if performed to attain what is considered a sincere religious experience, is not protected by the First Amendment.

It follows that the trial court correctly struck evidence of appellant's religious defense from the record. An alternative, and more expedient, method of considering such an affirmative defense would be by offer of proof: unless a defendant can conscientiously offer to prove by detailed factual representation that his use of marijuana comes within the stringent standards of *Woody* as interpreted herein, a trial court should deny admission of any evidence pertaining to such a defense. Only after the trial court accepts a sufficient offer of proof should the trier of fact

---

[7]We note, however, that appellant seeks to distinguish *Collins* in part on the basis that the only evidence presented there in addition to the defendant's testimony were three law review articles. In fact, though, appellant presented two of the very same authors of those articles as witnesses at trial on his behalf.

[8]Appellant's testimony also revealed, however, his receipt of payment for some quantities of marijuana presented to acquaintances, his expectation of personal "gain" upon obtaining the bags of marijuana, his sampling of portions of the bags for other than religious purposes, and his use of marijuana with associates at his business offices.

be permitted to consider evidence relating to the religious defense and the sincerity of the claimed practitioner. (See *People* v. *Mitchell, supra,* 244 Cal.App.2d at pp. 182-183.)

In fact, counsel for appellant did make an offer of proof—which falls far short of the *Woody* standards—with respect to his religious defense in chambers prior to selection of the jury. A trial memorandum and proposed instructions on the defense were also submitted. The court properly declined to rule on the merits of the offer of proof until he had studied the law on the matter.

This, of course, presented an obvious procedural problem i.e., whether the impanelment of the jury and progress of the trial should commence (the jury panel was standing by) or whether the court should first rule on the offer of proof. At this point the trial judge discussed this problem with counsel at length, whereupon it was agreed that the jury *voir dire* would proceed with interrogation on the religious issue being carried out on "if-the-Court were to instruct you" basis. That appellant acquiesced in and fully appreciated the possible consequences of this procedure should his proof on the religious defense be ruled insufficient is demonstrated by the record.[9]

---

[9]"THE COURT: . . . Now, the question has come before the Court as to how we are to proceed at this time, because the Court has just received the Memorandum and has not had an opportunity to review the authorities cited, and the District Attorney is going to provide the Court with a, presumably a counter-Memorandum on the matter, at least a Memorandum. So it has been agreed that until the Court has had an opportunity to determine the procedural manner in which we will take up this issue, that Mr. Hallinan will make an offer of proof at this time for the Court, and the offer of proof seems to have substance and to be bona fide. The Court would then permit the jurors, in their voir dire of the prospective jurors, to be examined on the if-basis, if the Court were to instruct you along these lines. Is that fair, a brief statement of what we are here for? MR. BALES [prosecutor]: I think it covers it, Judge. MR. HALLINAN [appellant's counsel]: Yes. . . .

MR. BALES: I think this is an area where, before this is submitted to the jury any issues involved here that the Court has to determine, make a determination of law as to whether there is sufficient showing to submit the issue to the jury. THE COURT: Right. I assume that. MR. HALLINAN: I intend to make a number of Motions prior to sending the case to the jury, and I had felt that at that time we would take up the question of whether a case had been made to send it to the jury. MR. BALES: We don't like to arrive at that after the damage has been done. I would rather get a determination from the Judge at the outset so that we can avoid a lot of— THE COURT: How can we get the information without going through the entire defense case, in effect? MR. HALLINAN: How can he balance when he only knows one side of the scale? MR. BALES: Well, I guess—all right. THE COURT: It just seems to me the most reasonable approach is to go ahead on our so-called iffy-basis, and when the evidence is in, then the Court will have to determine whether or not the cases, and I will have to read them, apply to this, or that the evidence indicates that in this particular case an instruction on this offense should be given to the jury for their consideration. MR. BALES: I am wondering, Judge—MR. HALLINAN: Correct, Your Honor."

Thereafter, counsel for appellant gave a lengthy opening statement, during which a prosecution objection to its scope was overruled by the court based on the prior offer of proof. Evidence was then presented, including the testimony of appellant admitting that he possessed marijuana in his home. Prior to such testimony, appellant expressly waived declaration of a mistrial upon the sustaining of his objection to the admission of the bags of marijuana, expressing satisfaction that an appropriate instruction would eliminate possible prejudice.

■ Appellant contends that the failure of the trial court to rule upon the religious defense until after he had admitted possession of the marijuana and after he had waived a mistrial constituted prejudicial error. This contention is devoid of merit. Although a ruling upon the religious defense pursuant to an offer of proof prior to presentation of evidence would have avoided such difficulties and expedited completion of the trial, we have pointed out that appellant concurred in the deferred ruling and expressly waived a proffered mistrial. In addition, the presence of overwhelming evidence in the record of appellant's possession and cultivation of marijuana apart from his own admission demonstrates that a different verdict was unlikely. The delayed ruling thus did not result in prejudice.

### Entrapment

Appellant additionally claims that the evidence discovered in his residence should be excluded as the product of an entrapment. He argues that his federal court prosecution resulted in a determination that he had been entrapped with respect to the bags of marijuana and that the evidence discovered during the ensuing search of his residence constitutes the inadmissible product of this entrapment. This contention is unpersuasive since the record on appeal contains no evidence that entrapment formed the basis of the federal court's disposition. Moreover, appellant cites no authority supporting his contention that entrapment with respect to certain evidence necessarily results in suppression of other evidence. Nor does appellant indicate that the evidence was sought to be suppressed on this basis at the suppression hearing. (See Pen. Code, § 1538.5, subd. (m).)

■ Furthermore, entrapment is an affirmative defense, which must be raised and proved by the defendant. (*People* v. *Moran* (1970) 1 Cal.3d 755,

760 [83 Cal.Rptr. 411, 463 P.2d 763].) Appellant raised no such issue at trial and therefore cannot do so for the first time on appeal.

The judgment is affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 4, 1971.