[Crim. No. 12631. First Dist.. Div. One. July 23. 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
IRA MULLINS, Defendant and Appellant.

COUNSEL

John Doyle, under appointment by the Court of Appeal, and Fred Hurvich for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart, William D. Stein and Ina L. Gyemant, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**MOLINARI, P. J.**—Defendant was found guilty of violating former Health and Safety Code section 11530.1 (now § 11358) (planting and cultivating marijuana). He contends that there was an unreasonable search and seizure of his property; that the trial court improperly denied his motion pursuant to Penal Code section 995; and that the trial court erred in rejecting his offer of proof as to his religious use and worship of marijuana. We have concluded that none of these contentions has merit and that the judgment must therefore be affirmed.

The instant case was called for trial by jury but prior to the impaneling of the jury defense counsel made an offer of proof as to a defense he proposed to make to the charge in the information. He stated he would offer to prove through the testimony of defendant and other witnesses that defendant worships marijuana; that marijuana is essential to and exclusively a religious ritual; that marijuana constitutes an integral part of his religious belief and practice; and that defendant grows and uses marijuana pursuant to an honestly held good faith religious belief and practice and provides safeguards against misuse of marijuana. Defense counsel then proceeded to detail the testimony that would be given. The trial court indicated it would rule that the offer of proof did not constitute a defense to the charge. Colloquy between court and counsel then ensued and it was stipulated between the parties that there would be a conditional waiver of a jury trial; that the matter would be submitted on the preliminary transcript and on the transcript on the motion made pursuant to Penal Code section 1538.5; that in the event of a judgment finding defendant guilty he could urge on the appeal the validity of the issue tendered by the offer of proof; and that in the event of a reversal by the appellate court and a remand for a trial on

defendant's defense based on religious belief that issue could be tried by a jury. The court then made a finding that defendant was guilty of planting and cultivating marijuana as charged in count one of the information.

The pertinent facts are as follows: On May 27, 1972, at about 1 a.m., Murrell Agenbroad, a Mendocino County Deputy Sheriff, was accosted by Richard Satterfield who told Agenbroad that he was living on the "Mullins property" in a teepee and that marijuana plants were growing outside of his teepee. Agenbroad questioned Satterfield concerning his knowledge of marijuana and upon ascertaining that Satterfield was familiar with it asked if a sample could be obtained. Satterfield invited Agenbroad to come to the property for the purpose of picking a couple of plants to verify that they were marijuana plants and stated that they could go out "right now" if Agenbroad wished. Satterfield and Agenbroad then drove out in a patrol car to the "Mullins property." They arrived there sometime between 1 a.m. and 2 a.m.

The "Mullins property" is owned by defendant. It is located north of Laytonville. Access to the property is over Ten Mile Creek Road, a private road off Highway 101, which provides access to several individually owned tracts of land in the area. Defendant's property is not enclosed or surrounded by a fence. From Ten Mile Creek Road there is a driveway that leads onto defendant's property. There is no gate at the entrance to the property. At the entrance there is a sign reading "Universal Life Church of Christ Light."

Agenbroad parked his car on Ten Mile Creek Road and he and Satterfield walked onto defendant's property along the driveway. When Satterfield had first spoken to Agenbroad he had mentioned that marijuana was growing in a garden which was located 10 to 20 feet from the teepee in which he was living. The two men went immediately to this garden.

Between the teepee and the garden there was thick brush which was about four and one-half feet high and appeared to act as a fence. Access to the garden was available through portions of this brush. Upon reaching the garden Agenbroad took two plants as samples to be tested. The plants were four to six inches in height. Upon obtaining the two plants Agenbroad and Satterfield left the property.

On May 30, 1972, Agenbroad and approximately four other officers went to defendant's property with a search warrant based upon an affidavit executed by Agenbroad. The officers arrived at approximately 6 p.m., identified themselves, showed a badge and gave defendant a copy of the search warrant. The officers proceeded to search defendant's property and found several gardens where marijuana plants were growing. Defendant was then placed under arrest and transported to the sheriff's office where he was advised of his constitutional rights. Defendant indicated he understood the admonition and proceeded to give a statement in which he stated that all the plants growing on his property were his and that he assumed full responsibility for the plants.

Defendant's wife testified that on and prior to May 30, 1972, there was a "no trespassing" sign at the entrance to the property; that a church known as "Universal Life Church of Christ Light" is located on the property and is open to members of the public who are interested in "The Urantia Book"; that church services are usually held in the area of the teepees; and that from this area none of the gardens are visible. She testified, however, that people were not told they could not leave the campsite. Mrs. Mullins also stated that Satterfield was told he could live on the property and was welcome as long as he did not drink, but that he was no longer welcome because he had continued his drinking.

Defendant testified that Satterfield had left the premises three or more days before May 30, 1972; that he was no longer welcome because he had continued drinking, but he was free to return to retrieve his belongings; and that Satterfield could return if he remained sober.

Agenbroad testified that he could not see the gardens or the marijuana plants without entry upon defendant's property. He was not interrogated as to whether or not he had seen a "no trespassing" sign at the entrance to the property. Marvin Chapman, one of the officers who participated in the search pursuant to the search warrant, was queried as to whether he had observed any "no trespassing" signs in the area. He replied that he did not see any signs.

Defendant contends that he had a reasonable expectation of privacy from governmental intrusions on his property and particularly the gardens that were hidden from public view. He also asserts that the initial entry upon defendant's property was unreasonable because it occurred at night and that this circumstance adds to defendant's

"subjective" expectation of privacy. With respect to Agenbroad's initial entry on the premises we observe that it was with the consent of Satterfield, a resident upon defendant's property. It is not contended by defendant that Satterfield was without authority to invite persons to enter upon defendant's land for business and social relationships with Satterfield but it is apparently his contention that any such invitation could not extend to the gardens which he asserts were hidden from public view.

The applicable principle is stated in *Katz* v. *United States,* 389 U.S. 347, 351-352 [19 L.Ed.2d 576, 582, 88 S.Ct. 507], as follows: "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [Citations.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. [Citations.]" In applying the *Katz* standard the California courts have used the formula of "reasonable expectation of privacy." (*People* v. *Bradley,* 1 Cal.3d 80, 84 [81 Cal.Rptr. 457, 460 P.2d 129]; *North* v. *Superior Court,* 8 Cal.3d 301, 308-314 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155].) Accordingly, the question in each case becomes a weighing of the factual circumstances of the conduct to determine whether it was "reasonable" to expect freedom from the particular observation that occurred. (*North* v. *Superior Court, supra; Vidaurri* v. *Superior Court,* 13 Cal.App.3d 550, 553 [91 Cal.Rptr. 704]; *People* v. *Fly,* 34 Cal.App.3d 665, 667 [110 Cal.Rptr. 158].)

Two California cases have considered observations of marijuana plants growing in open fields. In *People* v. *Sneed,* 32 Cal.App.3d 535 [108 Cal.Rptr. 146], the police received a tip that marijuana was being grown somewhere on a 20-acre ranch. The police had gone to the premises and determined they could see nothing from the public roadway. Thereafter a deputy engaged a helicopter and flew over the ranch and spotted what he believed to be two marijuana plants. The officer then went to the premises and closely examined the plants and placed defendant under arrest. The court, in holding the search and seizure illegal, said: "It is settled that before the plain-view doctrine can be invoked the officer must have a right to be in the position from which he makes the plain-view observation. [Citations.] The positioning of the helicopter 20 to 25 feet above appellant's backyard, in addition to being an obtrusive invasion of privacy, was probably illegal. While appellant certainly had no reasonable expectation of privacy from his neighbor and his neighbor's permittees and none from airplanes and helicopters flying at legal and reasonable heights, we have concluded that he did have a reasonable expectation of privacy to be free from noisy police observa-

tion by helicopter from the air at 20 to 25 feet and that such an invasion was an unreasonable governmental intrusion into the serenity and privacy of his backyard." (At pp. 542-543.)

In *Dean v. Superior Court,* 35 Cal.App.3d 112 [110 Cal.Rptr. 585], an anonymous letter was received by the authorities that marijuana was being cultivated in an isolated area hidden from view by surrounding hills and woods. An officer, flying over the general area indicated in the letter, was able to identify marijuana plants growing in a sizable patch surrounded by trees. The officers then followed a "well-worn" footpath in an area which was not "posted" against trespassers, and in which there were no fences, to a point where the tops of marijuana plants were visible. The appellate court held that the officers had viewed the contraband from a place where expectations of privacy had not been exhibited and that, accordingly, they had probable cause and authority for a warrantless entry and seizure. (At pp. 118-119.) The rationale of the reviewing court was that one who establishes a tract of cultivation surrounded by forests exhibits no reasonable expectation of immunity from overflight and that since no badges of private ownership or of exclusion of travelers were exhibited on the footpath there was no expectation of privacy. (At pp. 116-118.)

■ The applicable principle distilled from the cases is that when police have a plain view of contraband from a place in an area as to which the occupant has exhibited no expectation of privacy, there is no search in a constitutional sense. (See *Lorenzana v. Superior Court,* 9 Cal.3d 626, 634 [108 Cal.Rptr. 585, 511 P.2d 33]; *People v. Dumas,* 9 Cal.3d 871, 882, fn. 10 [109 Cal.Rptr. 304, 512 P.2d 1208]; *Dean v. Superior Court, supra,* 35 Cal.App.3d 112, 117.)

■ In the present case the totality of the facts and circumstances discloses that defendant's property had lost its private character and that there was no expectation of privacy at the place where Deputy Agenbroad first viewed the marijuana plants. Defendant and his wife conducted a church on the premises which was open to the members of the public who were interested in "The Urantia Book." Church services were conducted in the area in which Satterfield's teepee was located. This teepee was in close proximity to the garden in which Agenbroad observed the growing marijuana plants. Persons who attended the church services were not precluded from going upon other areas of defendant's property, including the garden area. There were no fences or gates around the garden and although the garden was surrounded by brush

there were openings in the brush permitting access to the garden. We apprehend that if defendant had no expectation of privacy insofar as persons who came on the property either in connection with the operation of the church or as invitees of persons residing upon the property, it may not reasonably be contended that public access was restricted solely to the daylight hours.

The conclusion we have reached disposes of defendant's contention that the trial court erred in denying his motion to set aside the information pursuant to Penal Code section 995. That motion was predicated on the ground that the evidence was insufficient to hold him to answer on the charge because the evidence was seized in violation of his Fourth Amendment rights. Since the infirmity asserted does not exist and the evidence sought to be suppressed is admissible, there is sufficient evidence to establish that defendant has been committed with reasonable and probable cause.

Adverting to defendant's contention that the trial court improperly rejected his offer of proof as to his religious use and worship of marijuana, we consider the case of *People v. Woody*, 61 Cal.2d 716 [40 Cal.Rptr. 69, 394 P.2d 813]. In that case the defendants were convicted of violating section 11500 of the Health and Safety Code which prohibits the unauthorized use of peyote. It was stipulated at the trial that at the time of the arrest the defendants and other Indians were performing a religious ceremony which involved the use of peyote. The defendants were members of the Native American Church of the State of California whose articles of incorporation declared that the members of the church pledged themselves to work for unity with the sacramental use of peyote and its religious use. The Supreme Court held that the practice of using peyote in a bona fide use of a religious faith does not frustrate a compelling interest of the state and that therefore the application of section 11500 as to the defendants, who were using peyote in good faith in the pursuit of their religious faith, defeated the immunity of the First Amendment of the Constitution of the United States. (At p. 717.)

*Woody* utilized a twofold analysis applied in *Sherbert v. Verner*, 374 U.S. 398 [10 L.Ed.2d 965, 83 S.Ct. 1790], which calls, initially, for a determination whether the statute in question imposes any burden upon the free exercise of the defendant's religion, and if it does, whether some compelling state interest justifies the infringement. (61 Cal.2d 716, 719.)

The first step, in turn, requires two determinations, i.e., whether the statute imposes any burden upon the free exercise of the religion whose religious beliefs the defendant asserts he embraces and whether the defendant actually engaged in good faith in that religion. (*People* v. *Woody, supra,* 61 Cal.2d 716, 726; *In re Grady,* 61 Cal.2d 887, 888 [39 Cal.Rptr. 912, 394 P.2d 728].) In *Woody* the reviewing court made the following observation: "Yet the trier of fact need inquire only into the question of whether the defendant's belief in Peyotism is honest and in good faith. As the court in *United States* v. *Ballard* (1944) 322 U.S. 78 [64 S.Ct. 882, 88 L.Ed. 1148], held, although judicial examination of the truth or validity of religious beliefs is foreclosed by the First Amendment, the courts of necessity must ask whether the claimant holds his belief honestly and in good faith or whether he seeks to wear the mantle of religious immunity merely as a cloak for illegal activities." (61 Cal.2d at p. 726; *In re Grady, supra.*)

We apprehend that within the first step the first determination is a question of law for the trial court and the second is a question of fact for the trier of fact. Of course the determination whether there is such a religion as that asserted by the defendant and whether it espouses and embraces the religious beliefs, practices and ceremonies alleged by the defendant will require that evidence thereof be adduced so that the court can make the determination as a matter of law whether the application of the statutory prohibition results in a virtual inhibition of the practice of the religion. (See *People* v. *Woody, supra,* 61 Cal.2d 716, 720-722.) An expedient method of making this determination is through the procedure of an offer of proof. (See *People* v. *Werber,* 19 Cal.App.3d 598, 608-609 [97 Cal.Rptr. 150].)

We note, here, that where it is claimed that the use of a narcotic, drug or an hallucinogen which the statute proscribes is a religious practice, it must be established that such practice is an integral part of a religious faith and that the prohibition of the narcotic, drug or hallucinogen results in a virtual inhibition of the religion or the practice of the faith. (*People* v. *Woody, supra,* 61 Cal.2d 716, 722; *People* v. *Collins,* 273 Cal.App.2d 486, 487 [78 Cal.Rptr. 151]; *People* v. *Mitchell,* 244 Cal.App.2d 176, 182 [52 Cal.Rptr. 844].) It does not suffice to show that the use of the narcotic, drug or hallucinogen is an expression of the defendant's own personal philosophy and way of life *(People* v. *Mitchell, supra)* or that its employment is an auxiliary to the attainment of a

desired capacity for communication with the Supreme Being. (*People* v. *Collins, supra; People* v. *Werber, supra,* 19 Cal.App.3d 598, 607-608.)

■ Adverting to the second step, we observe that once it is established that the application of the statutory prohibition results in a virtual inhibition of the practice of the defendant's religion the burden shifts to the state to demonstrate that a compelling state interest necessitates an abridgement of the defendant's First Amendment right. (*People* v. *Woody, supra,* 61 Cal.2d 716, 719-722; *Sherbert* v. *Verner, supra,* 374 U.S. 398, 406 [10 L.Ed.2d 965, 971-972].) When a compelling state interest is demonstrated its weight must be placed against the heavy weight of the right of freedom of religion as protected by the First Amendment and if the "scale of constitutionality" tips in favor of the state's compelling interest the First Amendment right may be abridged. (*People* v. *Woody, supra,* at p. 727.)[1] We apprehend, from our reading of *Woody,* that such a determination is a question of law. (See 61 Cal.2d at pp. 722-727.) Since such determination is a question of law, the trial court's determination will not be binding on an appellate court and the reviewing court may weigh the competing values represented in the case.

■ In the instant case the second step was not reached because the trial court ruled that as a matter of law defendant's offer of proof was insufficient to establish that defendant's use of marijuana came within the standards prescribed by *Woody.* The substance of the offer of proof is set forth in the margin.[2]

---

[1] In *Woody,* the Supreme Court concluded that under the showing made the use of peyote for a religious purpose presented only a slight danger and the enforcement of its laws when balanced against the weight of the constitutional protection of freedom of religion. (At p. 727.)

[2] Defendant offered to prove that he worships marijuana as a manifestation of the Divine; that he has been in pursuit of means of achieving a higher communication or union with God and his Lord and Master, Jesus Christ; that he first attempted to achieve such union through methods expounded by the Rosecrucian Fellowship through a vegetarian diet, abstinence from alcohol and tobacco, morning and evening exercises in meditation, concentration, devotion to high ideals, fasting, and daily study of The Rosecrucian Cosmo Conception, the end result of which posits or assumes a chemical change in the blood and brain leading to the achievement of transcendental states; that such pursuit led him to The Urantia Book and the use of LSD, peyote and marijuana; that he achieved the transcendent state, or what he in good faith believed was such state, of total and complete union with God and his Lord and Master, Jesus Christ by performing his concentration and meditation exercises while under the influence of marijuana; that he cannot achieve such states without the use of marijuana; that he loves and admires marijuana and holds it in high regard; and that marijuana "constitutes an

We have concluded that the trial court was correct in its determination that defendant's offer of proof falls short of the *Woody* standards. Although the offer proffers evidence that defendant worships and sanctifies marijuana and that he uses it in his religious practices, the offer of proof does not proffer any evidence that the use of marijuana is an indispensable part of the religion professed by the Universal Life Church of Christ Light of which defendant is a pastor. The proffered evidence does not indicate that the prohibition of the use of marijuana results in a virtual inhibition of the practice of defendant's religion. As observed in *Woody*, the effect of the application of the prohibition must be such as "to remove the theological heart" from the religion. (61 Cal.2d at p. 722.) The offer of proof does not proffer any evidence that the prohibition of the use of marijuana bars defendant from practices indispensable to the pursuit of his religiodus faith. Rather it compels him to abandon what he has discovered is an auxiliary to what is referred to in *Collins* as a "desired intensification of apperception." (273 Cal.App.2d at p. 488.) Defendant indicates in his offer of proof that he has been experimenting with other self-induced means of attaining the desired apperception and the capacity for communication with the Supreme Being but that he has found marijuana to be the most efficacious. This discovery and conclu-

---

object of worship and a sacrament of his church. essential to an exclusively religious ritual."

Defendant offered. further. by his testimony a description of the ceremony which he holds as pastor of the Universal Life Church of Christ Light: how that ceremony evolved from defendant's religious practice: how the participants worship marijuana by first sitting in a circle and passing among themselves the sacrament. marijuana. then joining hands they chant the Asana Aum. while concentrating or meditating on the attributes of Christ. and then read selected passages from The Urantia Book. and discuss said passages and their application to the participants' everyday lives: how marijuana constitutes an indispensable part of this ceremony: and that he has held said ceremonies at least 1,000 times.

The offer of proof also included an offer to prove the place of The Urantia Book in defendant's religious beliefs and how it has patterned his mind for right thinking and living: how it discusses and explains the attributes of Jesus Christ; and how the passages therein form subjects for concentration pursuant to defendant's religious practices and the ceremony evolved by defendant. The offer of proof includes, further, a statement that other witnesses. identified by name. would testify as to the sincerity of defendant's religious belief and practice. of the efficacy of marijuana in bona fide pursuit of a religious faith. and of the use of marijuana by other cultures and religions for religious purposes.

Finally defendant offered to testify that he has never introduced any person to the use of marijuana: that the adherents to his religious practices have come to him seeking guidance: that marijuana is part of the Divine Plan and its only proper use is for the purpose of attaining unity with Christ: and that defendant's growing of marijuana is solely related to the religious practices described in the offer of proof.

sion does not necessarily rule out other self-induced means which are not proscribed by statute.

The judgment is affirmed.

Elkington, J., and Lazarus, J.,* concurred.

A petition for a rehearing was denied August 20, 1975, and appellant's petition for a hearing by the Supreme Court was denied September 17, 1975.

---

*Retired judge of the superior court sitting under assignment of the Chairman of the Judicial Council.