Angelo Mauceri, J.
The defendant is charged with possession of dangerous drugs in violation of Section 220.05 of the Penal Law. The facts surrounding the act of possession are not in dispute. The defendant does not deny having possessed the drugs, but takes the position that his possession and use of drugs was in connection with the practice of his religion and thus is protected by the First Amendment of the United States Constitution.
*501 The Arguments
The defendant claims that he is a parishioner and minister of the Chnrch of the Missionaries of the New Truth; that in that capacity he uses marijuana and LSD to achieve a religious experience and to find God; that this is the way he practices his religion; and that therefore he is exempt from law prohibiting the possession of drugs.
The People counter that the defendant has not shown that his possession and use of drugs is in connection with the -practice of Mwu^ligron7^T~aííy~religion; and that, even if he had made suchaTshowing the State’s interest in the preservation, safety and welfare of society at large is paramount to the defendant’s individual right of religious worship.
The Law
The defendant relies primarily on the cases of People v. Woody (61 Cal. 2d 716 [1964]) and an unreported Arizona case referred to in the Woody decision as Arizona v. Attakai (Crim. No. 4098, Coconino County [1960]); and two Federal regulations, one issued by the Bureau of Narcotics and Dangerous Drugs of the Department of Justice (Code of Fed. Beg., tit. 21, § 320.3) and the other by the Secretary of Health, Education and Welfare (Code of Fed. Beg., tit. 21, § 166.3(c) (3)).
The Woody case, discussed in 35 ALB 3d 939, involved a conviction for possession of peyote, a hallucinogenic drug similar in effect to LSD. The defendants were Navajo Indians and members of the Native American Church. It was the customary practice of the members of that church to use peyote during their religious ceremonies. The court’s findings of fact were that ‘ ‘ peyote [not only] served as a sacramental symbol similar to the bread and wine in certain Christian churches [but was] in itself an object of worship to which prayers were directed by the church members — and that to apply the statute so as to prohibit the use of peyote in the ceremonies of the Native American Church would result in virtual inhibition of the defendants’ practice of their religion.” (Ann. 35 ALB 3d 950.) The court then stated its ‘ ‘ basic position that a state may abridge religious practices only upon a demonstration that some compelling state interest outweighs the defendant’s interest in religious freedom ”. (Ann. 35 ALB 3d 949.)
The decision in Arizona v. Attakai is quoted extensively in the defendant’s brief, the following excerpt being the most pertinent.
" Peyote • is not a narcotic. It is not habit forming. It is actually unpleasant to take, having a very bitter taste.
*502 “ There is no significant use of peyote by persons other than Indians who practice peyotism in connection with their religion. There are about 225,000 members of the organized church known as the Native American Church which adheres to this practice. The Peyote rite is one of prayer and quiet contemplation. The doctrine consists of belief in God, brotherly love, care of family and other worthy beliefs. The use and significance of peyote within the religious framework is complex.
“ It is conceived of as a sacrament, a means of communion with the spirit of the Almighty — and as an object of worship, itself as having been provided for the Indian by the Almighty.
“ The Indians use Peyote primarily in connection with their religious ritual. When thus consumed, it causes the worshipper to experience a vivid revelation in which he sees or hears the spirit of a departed loved one, or experiences other religious phenomena; or he may be shown the way to solve some daily problem, or reproved for some evil thought or deed. Through the use of Peyote, the Indian acquires increased powers of concentration and introspection, and experiences deep religious emotion. There is nothing debasing or morally reprehensible about the peyote ritual.
“ The use of peyote is essential to the existence of the peyote religion. Without it, the practice of the religion would be effectively prevented. The manner in which peyote is used by the indian worshipper is not inconsistent with the public health, morals or welfare. Its use, in this case, is in fact entirely consistent with the good morals, health and spiritual elevation of some 225,000 Indians.”
The Woody case was followed and its rationale reiterated in Matter of Grady (61 Cal. 2d 887, 888 [1964]) which stated that ‘1 the state may not prohibit the use of peyote in connection with bona fide practice of a religious belief ’ ’.
However, subsequent California cases have been very careful to point out that a person’s constitutional freedom to practice-his religion can be a valid defense against a criminal prosecution for possession and us^of drugs only jmder ce-r-tain-ggery restricted conditions. In People v. Mitchell (244 Cal. App. 176 [1966]), the defendant, who was convicted of possession of marijuana, asserted as a defense that he smoked marijuana pursuant to a religious belief. The court, however, found that there was no evidence to show tKaFTns use of marijuana was a religious practice in any sense ol~fhe termTjffláOEé defendant used marijuana only in accordance with his own philosophy that smoking marijuana was beneficial to him; that he was not a member of any organized religion and that all he could validly *503 assert was that it was his right to conduct himself as he pleased in his own home. The judgment of conviction was affirmed.
la. People v. Collins (273 Cal. App. 2d 486 [1969]), the defendant likewise contended that his use of marijuana was for religious purposes. 11 Defendant had testified that he used marijuana to extend and intensify his ability to engage in meditative communication with the Supreme Being, to attain spiritual peace through union with God the Father, and to search out the ultimate meaning of life and nature; and there was additional evidence as to the religious connotations of marijuana use. Finding the situation here presented distinguishable from the Peyote . Cases involving a religious faith in~pevotAas~an'-obieet-o£-war-ship, and pointing outthataccording to the record this defendant did not worship or sanctify marijuana, but employed Its" hallucinogenic biochemical properties as an auxiliary to a desired capacity for communication, and that the law here involved dicl not bar the defendant from practices indispensable to the pursuit of his faith, the court concluded that the state’s general nondiscriminatory prohibitions against marijuana expressed a compelling state interest and did not in this case violate the ban on interference with religion. ’ ’ (Ann. 35 ALE 3d 948-949.) The same conclusion was also reached in People v. Wright (275 Cal. App. 2d 738 [1969]).
With respect to the/Federal regulations referred -tor ■ fheyy provide for an exception to the prohibition against the use of drugs specifically for peyote when used in bona fide religious ceremony of the Native American Church only. In fact, another group called the Church of the Awakening petitioned the government for a grant of a similar immunity, but was denied. The defendant’s brief submits excerpts from the government’s decision:
“ The Native American Church is different and distinct from that of the Church of the Awakening. The government alleges the special membership requirements of the Native American Church and the overriding factor that peyote is essential and central to the religion in that without peyote their religion would not and could not exist. ’ ’
" Peyote-obviemsly is not pasp-ntía] to the existence of the Church of the Awakening. The Church has existed and does exist without the use of the drug. Other means may and are being utilized to achieve the fundamental goals of the Church.”
It should be noted at this point that this defendant’s own expert witness, Walter Houston Clark, testified that the defendant’s religious organization “is very similar to the Church of the Awakening ’ ’.
*504 The peyote exceptions have been found only in the instances mentioned above. On the other hand, there is authority in other jurisdictions for the general proposition that the constitutional freedom of religious practice is not a valid defense to a penal charge relating to the possession or use of drugs.
In Leary v. United States (383 F. 2d 851 [5th Cir. 1967], revd. on other grounds 395 U. S. 6 [1969]) the defendant Timothy Leary ‘1 testified that he used marijuana only for religious purposes, in accordance with the practice of a sect of the Hindu religion of which he had become a member; that using marijuana enabled him to obtain what he described as the 1 third level of consciousness ’; and that if he could not use marijuana, it would not affect his religious beliefs but he would consider it a violation of those beliefs and practices.” (Ann. 35 ALB 3d 945.)
The. court upheld the defendant’s conviction and wrote as follows (p. 861): “Congress has demonstrated beyond doubt that it believes marihuana is an evil in American society and a serious threat to its people. It would be difficult to imagine the harm which would result if the criminal statutes against marihuana were nullified as to those who claim the right to possess and traffic in this drug for religious purposes. For all practical purposes the anti-marihuana laws would be meaningless, and enforcement impossible. The danger is too great, especially to the youth of the nation, at a time when psychedelic experience, ‘ turn on, ’ is the ‘ in ’ thing to so many, for this court to yield to the argument that the use of marihuana for so-called religious purposes should be permitted under the Free Exercise Clause. We will not, therefore, subscribe to the dangerous doctrine that the free exercise of religion accords an unlimited freedom to violate the laws of the land relative to marihuana. ’ ’ The court also noted that the peyote cases were factually distinguishable from the Leary case, in that ‘ ‘ the use of peyote in the limited bona fide religious ceremonies of the small, relatively unknown Native American Church was clearly distinguishable from the private and personal use of marijuana by any person claiming to be using it as a religious practice.” (Ann. 35 ALB 3d 945).
While it may be argued that Timothy Leary’s conviction was based on the fact that he did not use marijuana as a member of any particular organized religion, there are other cases in which convictions were Upheld despite such a claim on the part of the defendant. In United States v. Kuch (288 F. Supp. 439 [D. C., 1968]), the defendant claimed to be “ an ordained minister of the Neo-American Church and presented evidence as to the nature and practices of that church organization, including its *505 basic doctrine that psychedelic substances, particularly marijuana and LSD, are the true ‘ Host ’ and that it is the religious duty of all members to partake of the sacraments on regular occasions.” (Ann. 35 ALB 3d 945-946). This court was unable to find that the Neo-American Church was a bona fide religion within the meaning of the first Amendment However, ther court went on to say that, even under the assumption that this church was a genuine religion, the unlawful practices involving drugs would not be protected by the Amendment.
‘‘ The public interest, the court said, is paramount, and if properly determined the Congress may inhibit or prevent acts, as opposed to beliefs, even where those acts are in accord with religious convictions or beliefs; if individual religious conviction permits one to act contrary to civic duty, public health, and the criminal laws of the land, then the right to be let alone in one’s belief would be destroyed in the resulting breakdown of society. The court concluded that under any common-sense view of undisputed facts the full enforcement of the statute here involved was necessary in the public interest and the unintended but obvious restrictions of the practices of the defendant’s church were wholly permissible.” (Ann. 35 ALR 3d 946).
Immunity from the narcotics laws was again denied to members of the Neo-American Church in North Carolina v. Bullard (267 N. C. 599 [1966]). The defendant’s brief correctly points out that the North Carolina court questioned the sincerity of the defendant’s claim. However, the court then went on to say: “ Even if the defendant were sincere and possessed and used such drugs only as required by his religious belief, his First Amendment rights did not protect him from criminal liability for such forbidden drug possession. The court said that it was true that the First Amendment permits a citizen complete freedom of religion, so that he may belong to any church or to no church and may believe whatever he will, but nowhere does it authorize him in the exercise of his religion to commit acts which constitute threats to the public safety, morals, peace, and order. The court concluded: ‘ The defendant may believe what he will as to peyote and marijuana and he may conceive that one is necessary and the other is advisable in connection with his religion. But it is not a violation of his constitutional rights to forbid him, in the guise of his religion, to possess a drug which will produce hallucinatory symptoms similar to those produced in cases of schizophrenia, dementia praecox, or paranoia, and his position cannot be sustained here — in law nor in morals. ’ ” (Ann. 35 ALR 3d 946-947).
*506 It might also be noted that at least one State has refused to afford the protection of the First Amendment even to the Indian members of the Native American Church (Montana v. Big Sheep, 75 Mont. 219 [1926]).
There have been no decisions thus far in New York State passing upon the validity of a defense to a criminal narcotics charge that the possession and use thereof were in connection with the practice of one’s religion and therefore protected by the First Amendment. The most nearly analogous case found was People v. Woodruff (26 A D 2d 236 [2d Dept., 1966]). Rosemary Woodruff had been found guilty of contempt for refusing to testify before a Grand Jury. She stated that her testimony would bring harm to others and that this would violate the tenets of her religious faith, alleged to be a certain unnamed belief akin to Hinduism. Expert witnesses in the field of oriental religion and Hinduism testified that her refusal to testify was based on a belief sincerely held by devotees of Hinduism. The court nonetheless rejected the contemner’s argument. It conceded her sincerity in her position and the preference to be given to the right of religious worship in our hierarchy of constitutional values, and reduced the problem to a twofold question: (1) whether a restriction would be imposed on the individual’s freedom of worship by the application of the penal drug laws; and (2) whether such a restriction would be justified, after a consideration of the social and constitutional values involved. The court answered the first question in the affirmative. Despite that, the court concluded (pp. 238, 239): “ Nonetheless, we hold that the interest of the State sought to be enforced outweighs in this instance the individual right. The community is entitled to the assistance and information of its members in seeking out and controlling the commission of crime. * # #
“ The State’s interest in enforcing the power of the Grand Jury to inquire into the commission of crime is paramount to the contemner’s religious right in the context of this case. Immunity has been granted to her, and the inquiry before the Grand Jury related to the commission of serious crimes within the county. The questions asked the contemner were material to the inquiry, and it was her duty to answer them. Her religious scruples must give way to the dominant right of the State to maintain peace and order. If it were otherwise, the fabric of society might be pierced and fatally rent by a religious belief sincerely held by an individual in action or in non-action damaging to the continuing existence of peace and order in the *507 community; and the individual right, given vitality by the community, would take precedence over the right of the community to protect itself and to perpetuate the liberties granted to the individual. Clearly, such a result is impermissible.”
In reaching a determination in the case at bar, the court will assume for the sake of argument that the New York Court of Appeals would agree with the California Supreme Court in the decisions in Woody and Grady, in order to give this defendant every benefit of the doubt, even though such an assumption is probably not warranted.
The defendant’s principaTwitness was Walter Houston Clark, an expert in the field of psychology of religion. While his credentials as a scholar are acceptable, his personal knowledge of the defendant and of his religion is highly suspect. Mr. Clark testified that he could not remember the name of the defendant’s religion until he referred to his notes. Although he testified that, to his knowledge, the defendant has had religious experiences through the use of drugs and that his religious beliefs include the use of drugs, he also concedes that he has met the defendant only twice. Mr. Clark never witnessed any religious ceremony in which the defendant took part. He said that his conviction that the defendant had religious experiences through drugs was based on his conversations with the defendant and a questionnaire that the defendant answered. However, this witness has never attended any religious ceremony of the defendant’s church nor has he ever personally witnessed the defendant during one of these religious experiences.
The defendant himself has testified that it is possible to have a religious experience without The use oF drugs. AIso7"lie used marijuana before he ever became associated with the Missionaries of the New Truth about 500 times, and LSD about 35 or 40 times. With respect to his religious organization, he testified that he is not sure of the exact number of members and that he does not consider his following as people who are Missionaries of the New Truth but any one who is willing to listen to him. His certificate of ordination and his doctor of divinity were obtained simply by 11 a signature from a reverend of the Church to get a diploma and based upon his feeling about whether you deserve it or not you receive one.” He further testified that to pursue God within the meaning of his religion does not require the indoctrination of other people. Moreover, the defendant has never supplied LSD to anyone else. The defendant testified that he has been undergoing a religious experience ever since May of 1970 and has not come down from that experience which was “ aided or abetted by the taking of drugs ”.
*508 It is manifest that the circumstances under which this defendant seeks the protection of the First Amendment for his possession and use of marijuana and LSD bear no resemblance to the circumstances under which the Supreme Court of California granted such protection to the members of the Native American Church for the possession and use of peyote. There is no evidence that the defendant uses the drugs as part of any religious ceremony; that he has ever passed on drugs to or used drugs in the company of any other members of his church; that the use of drugs is an intrinsic part of the dogma of his church; or that the exercise of his own religious beliefs — primarily seeking the truth- — -would he inhibited without the use of drugs, even if it be conceded that the use of drugs may help him.
The court does not reach the question whether, even if the converse of each of these findings were true, this jurisdiction should even then take the position adopted by the State of California in the peyote cases but repudiated by every other jurisdiction in which the question has been raised.
This defendant’s possession of marijuana and LSD in violation of the Penal Law is not constitutionally protected, and the court finds him guilty as charged.
Sentence is scheduled for February 7, 1972 at First District Court, Hauppauge, New York.