593 P.2d 63

STATE of New Mexico,
Plaintiff-Appellee,

v.

Vernon Jack BRASHEAR,
Defendant-Appellant.

No. 3663.

Court of Appeals of New Mexico.

March 6, 1979.

**624**

John B. Bigelow, Chief Public Defender, Reginald J. Storment, App. Defender, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Lawrence A. Gamble, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendant was convicted of one count of possession of marijuana and two counts of distribution of marijuana. Defendant's testimony supports the evidence of State witnesses that he possessed marijuana and also distributed marijuana to adults. His claim is that these activities were in the exercise of religion and, thus, his conviction violated constitutional provisions. See Annot., 35 A.L.R.3d 939 (1971). We disagree, discussing: (1) the constitutional right; (2) religious conduct; (3) burden on religious conduct; (4) the balancing process; and (5) sincerity of belief.

*The Constitutional Right*

The First Amendment to the Constitution of the United States provides for "no law . . . prohibiting the free exercise [of religion]". Article XXI, § 1 of the Constitution of New Mexico provides: "Perfect toleration of religious sentiment shall be secure, and no inhabitant of this state shall ever be molested in person or property on account of his or her mode of religious worship."

In the polygamy case, *Reynolds v. United States,* 98 U.S. 145, 25 L.Ed. 244 (1878) stated the scope of the free exercise clause as follows:

Congress was deprived of all legislative power over mere opinion, but was left free to reach actions which were in violation of social duties or subversive of good order.

\* \* \* \* \* \*

Laws are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may with practices.

The foregoing language in *Reynolds* seems to indicate that a legislative provision, directed to a practice, ends the matter. Such a view is incorrect. In the compulsory school attendance case, *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) states: "[A] State's interest in universal education, however highly we rank it, is not totally free from a balancing process when it impinges on fundamental rights and interests, such as those specifically protected by the Free Exercise Clause of the First Amendment".

*Wisconsin v. Yoder,* supra, also states: [O]ur decisions have rejected the idea that religiously grounded conduct is always outside the protection of the Free Exercise Clause. It is true that activities of individuals, even when religiously based, are often subject to regulation by the States in the exercise of their undoubted power to promote the health, safety, and general welfare . . . .

But to agree that religiously grounded conduct must often be subject to the broad police power of the State is not to deny that there are areas of conduct protected by the Free Exercise Clause of the First Amendment and thus beyond the power of the State to control, even under regulations of general applicability.

Thus, in *Wisconsin v. Yoder,* supra, the United States Supreme Court examined and "balanced" the interests of the state and the defendants in determining whether the "exercise of religion" prevented a criminal conviction for violating the state's compulsory school attendance law.

New Mexico prohibits the possession and distribution of marijuana except as provided by our statutes. See §§ 30- 31 22 and 30–31- 23, N.M.S.A. 1978. The burden of proof of any exemption or exception is upon the person claiming it. Section 30- 31–37, N.M.S.A. 1978. A claim by a defendant that he may not be convicted because his activities, though a violation of the criminal statute, were in the free exercise of religion, is a defense. The remainder of this opinion discusses the aspects of the defense and how those aspects are decided.

### Religious Conduct

One inquiry, as to whether this defense exists, is whether any "religion" is involved in the matter. By "religion" we mean "religiously grounded conduct", *Wisconsin v. Yoder,* supra; that is, an action and not just a belief.

Defendant testified that during readings from the Bible (Book of Revelations) at a marijuana smoking party in 1970, he was "converted"; he knew beyond any doubt that Jesus Christ was the Word of God and the Savior. As a result of this experience, his conduct was radically changed. "I used the Bible totally as my guide as to whether I could or could not do something". Defendant engaged in intensive study of the Bible and came to the conclusion that God gave man every herb-bearing seed, including marijuana. Although defendant used marijuana prior to his conversion, marijuana was important after the conversion be-

cause marijuana was the fire with which baptisms were conducted by John the Baptist; "that is the Lord's consuming fire that is being sent upon all of mankind in the last days to destroy the evil out of him. That is the fire that comes first to the youth and then to adults. . . . It cannot be quenched." We are not concerned with the validity of these beliefs. *United States v. Ballard,* 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944).

What was the conduct based on these beliefs? Defendant used marijuana and distributed it. If denied the use of marijuana, "It would prevent me from having my free access to any and all herbs which is a blessing coming to me from God". Defendant's justification for selling marijuana was that "it is a free gift of God to me" and Jesus Christ "has delivered over all herbs". The effect of distributing marijuana "[i]n a religious sense" is that "it spreads the herb to more brothers." Defendant has sold marijuana to both adults and minors in the past, and would have no compunction in the future about selling marijuana to minors. However, a sale to minors is not involved in this case.

Defendant's testimony shows that his belief in the use and distribution of marijuana was based on his interpretation of the Bible, that he had the use of all herbs as a gift from God. Was this religiously-grounded conduct?

*Wisconsin v. Yoder, supra,* states:

Although a determination of what is a "religious" belief or practice entitled to constitutional protection may present a most delicate question, the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests. Thus, if the Amish asserted their claims because of their subjective evaluation and rejection of the contemporary secular values accepted by the majority, much as Thoreau rejected the social values of his time and isolated himself at Walden Pond, their claims would not rest on a religious basis. Thoreau's choice was philosophical

and personal rather than religious, and such belief does not rise to the demands of the Religion Clauses.

How are we to determine whether defendant's choice to use and distribute marijuana was religious or philosophical and personal?

■ Since everyone is precluded from making his own standards, *Wisconsin v. Yoder,* supra, we do not follow the approach used in decisions concerned with "religious beliefs" in determining whether one was entitled to conscientious objector status under the Universal Military Training and Service Act. It was held that sincere and meaningful beliefs, intensely personal, came within the meaning of "religious belief" under that act. Whether the registrant's belief was religious was determined " '*in his own scheme of things*' ". (Emphasis in original.) *Welsh v. United States,* 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); *United States v. Seeger,* 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

Only Justice Douglas, dissenting in *Wisconsin v. Yoder,* supra, would have followed the "religious belief" approach utilized in the selective service cases. As the above quotation shows, the majority opinion in *Wisconsin v. Yoder,* supra, rejects the "everyone makes the determination" approach under the constitutional Religious Clause.

The fact that the individual's determination is insufficient does not tell us what is a sufficient basis for determining religiously-grounded conduct.

*Wisconsin v. Yoder,* supra, held that the Amish objection to compulsory school attendance was more than a matter of personal preference; rather, it was a "deep religious conviction, shared by an organized group" following a traditional way of life which had not altered for centuries. Thus, *Yoder* suggests two considerations—whether the belief is of an organized group and whether the belief is a traditional belief.

■ In the peyote cases, the fact that an organized group espoused a belief was a factor considered in determining that the belief was religious. The organization was the Native American Church; peyote played a central role in the ceremony and practice of the church. *People v. Woody,* 61 Cal.2d 716, 40 Cal.Rptr. 69, 394 P.2d 813 (1964); see also *State, v. Whittingham,* 19 Ariz.App. 27, 504 P.2d 950 (1973). The organization's belief, in itself, does not, however, determine whether a belief is religious in a particular case. The defendant may not be a member of the organization. *Whitehorn v. State,* 561 P.2d 539 (Okla. Crim.1977). The organization may not be a religious one. *United States v. Kuch,* 288 F.Supp. 439, 35 A.L.R.3d 922 (D.D.C.1968).

■ The absence of an organization espousing the belief that a defendant contends is religious does not, in itself, determine whether an individual's belief is religious. *In re Grady,* 61 Cal.2d 887, 39 Cal. Rptr. 912, 394 P.2d 728 (1964) did not question whether the belief of a self-styled "way shower" was religious; rather, the issue was whether the belief was honest and bona fide.

■ Various decisions have discussed whether the belief is a traditional one; that is, how long the belief has been held. *Wisconsin v. Yoder,* supra; *People v. Woody,* supra. *State v. Whittingham,* supra, refers to Peyotism as "an established religion of many centuries' history. . . . not a twentieth century cult nor a fad subject to extinction at a whim." *Whitehorn v. State,* supra, states that Peyotism "is not a fad or a part of the popular drug culture." The traditionalism of a belief is a factor to be considered, particularly in connection with organizations, in determining whether a belief is religious. However, traditionalism, in itself, is not determinative because it would give no effect to conversions or to revelations.

■ The nature of the belief is a factor to be considered in determining whether the belief is religious. The peyote in *People v. Woody,* supra, was a protector, a sacrament, and more than a sacrament. "Peyote constitutes in itself an object of worship; prayers are directed to it much as prayers are devoted to the Holy Ghost. On the other hand, to use peyote for nonreligious

purposes is sacrilegious." *State v. Whittingham* states "the use of peyote during a 'meeting' is a central force and the theological basis of Peyotism. Peyote constitutes, in and of itself, an object of worship. Without it the sacraments of the Native American Church are obliterated."

In *People v. Collins,* 273 Cal.App.2d 486, 78 Cal.Rptr. 151 (1969): "Defendant testified that he used marijuana in order to extend and intensify his ability to engage in meditative communication with the Supreme Being, to attain spiritual peace through union with God the Father and to search out the ultimate meaning of life and nature." *Collins,* supra, states: "[D]efendant does not worship or sanctify marijuana, but employs its hallucinogenic biochemical properties as an auxiliary to a desired capacity for communication." In *People v. Werber,* 19 Cal.App.3d 598, 97 Cal.Rptr. 150 (1971) the trial court ruled that defendant's use of marijuana did not constitute a religious practice within the constitutional concept of religion. This ruling was upheld "in the absence of evidence that marijuana . . . itself constituted for the particular defendant an object of worship essential to an exclusively religious ritual." *Leary v. United States,* 383 F.2d 851 (5th Cir. 1967), reh. denied, 392 F.2d 220 (1968), rev'd on other grounds, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) states in footnote 11: "The exemption accorded the use of peyote in the limited bona fide religious ceremonies of the relatively small, unknown Native American Church is clearly distinguishable from the private and personal use of marihuana by any person who claims he is using it as a religious practice."

Definitions of a religious practice or religious conduct are difficult. See *Washington Ethical Society v. District of Columbia,* 249 F.2d 127 (U.S.App.D.C.1957); *Fellowship of Humanity v. County of Alameda,* 153 Cal.App.2d 673, 315 P.2d 394 (1957); *United States v. Kuch,* supra. We do not attempt such a definition. Our approach has been to review decisions which considered whether a belief was religious; that is, nonsecular. On the basis of these decisions we consider whether defendant's be-

lief in the use and distribution of marijuana was religious.

■ There is no evidence that defendant's belief was espoused by any organization or was a principle, tenet, or dogma of any organization of which he was a member. There is no evidence that defendant's belief encompasses marijuana as an object of worship or that the use and distribution of marijuana except in limited ways would be sacrilegious. There is no evidence that defendant uses marijuana to communicate with any Supreme Being; no evidence that defendant's use or distribution in any way involves any religious ceremony; no evidence that the use or distribution involves any principle, tenet, or dogma pertaining to the spiritual or eternal and, thus, nonsecular. The evidence shows that defendant's belief was derived from defendant's personal views of the Bible, and those views under the evidence are no more than that the use and distribution of marijuana was permitted because a gift from God. Such a permitted personal use does not amount to an intrinsic part of a religion, however religion may be defined. *People v. Crawford,* 69 Misc.2d 500, 328 N.Y.S.2d 747 (1972), affirmed 41 A.D.2d 1021, 340 N.Y.S.2d 848 (1973).

As stated in *People v. Mitchell,* 244 Cal. App.2d 176, 52 Cal.Rptr. 884 (1966):

[D]efendant has offered no evidence that his use of marijuana is a religious practice in any sense of that term. In defendant's discourse to the jury he did refer to the Bible and to the practices of some Hindus, but in essence he was expressing only his own personal philosophy and way of life.

Defendant's belief as to the use and distribution of marijuana was not a religious belief.

■ *People v. Mitchell,* supra, referred to defendant's "discourse to the jury". In this case defendant also discoursed, in the presence of the jury, concerning his beliefs. Recognizing that an "exercise of religion" defense has a potential as a fad defense, we point out: 1) whether a defendant's belief

is "religious" is to be decided by the trial court, and 2) unless the trial court rules that the belief is religious, evidence of a defendant's religious belief should not be introduced before the jury. *People v. Mullins,* 50 Cal.App.3d 61, 123 Cal.Rptr. 201 (1975); *People v. Werber, supra.*

### Burden on Religious Conduct

■■ Defendant asserts that a statute or regulation which imposes any burden on the exercise of religious conduct is unconstitutional. "Any burden" language is used in *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), but that case does not support such a broad proposition. A burden on the exercise of religious conduct does not exist if it "does not deny the free exercise of religious belief by its requirement". *Wisconsin v. Yoder, supra.* To be a burden, the "state regulation must be of the nature and quality so as to preclude or prohibit the free exercise of religion." *State v. Whittingham, supra.*

A second inquiry in connection with the free exercise defense is whether the state regulation does prohibit or preclude the free exercise of religion. We recognize that in most cases this inquiry will be hardly distinguishable from the balancing test involved in the third inquiry, subsequently discussed. *People v. Woody, supra,* held that forbidding the use of peyote destroyed the theological heart of Peyotism. In *Wisconsin v. Yoder, supra,* "the State's requirement of compulsory formal education after the eighth grade would gravely endanger if not destroy the free exercise of . . . [the Amish] religious beliefs." Thus, the decision as to the existence of a burden may forecast the decision under the balancing test. However, there may be cases where it does not; the impact of the regulation may be so slight as to not amount to a burden on the exercise of religion.

*People v. Collins, supra,* states:

According to the present record, defendant does not worship or sanctify marijuana, but employs its hallucinogenic biochemical properties as an auxiliary to a desired capacity for communication.

Whether this use is sacramental or philosophical is as much a verbal as legal question. . . . The point here is that the law does not bar him from practices indispensable to the pursuit of his faith. Rather, it compels him to abandon reliance upon an artificial aid and to utilize other, perhaps self-induced means to attain the desired intensification of apperception.

■ If defendant can obtain his "high" (his desired intensification of perception) by other means, requiring him to forego marijuana in obtaining that perception, would not be a burden on the free exercise of religion. See *People v. Mullins, supra.*

■ This second inquiry, concerning a burden, is a matter to be decided by the trial court. *People v. Mullins, supra; People v. Werber, supra.*

■ In this case, if defendant's belief as to the use and distribution of marijuana was religious, prohibition of that practice would be a burden on the free exercise of religion.

### Balancing Process

■ If religious-grounded conduct is burdened by a state regulation, the third inquiry involves a balancing of the interests involved. If the regulation is a burden which denies the free exercise of religion, the regulation will not be sustained against the exercise of religion defense unless "there is a state interest of sufficient magnitude to override the interest claiming protection under the Free Exercise Clause." *Wisconsin v. Yoder, supra.*

What type of interest amounts to an interest of "sufficient magnitude"? *Wisconsin v. Yoder, supra,* refers to "interests of the highest order". *Sherbert v. Verner, supra,* refers to a "compelling state interest" directed to grave abuses endangering paramount interests. *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), reh. denied, 393 U.S. 900, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968), a "free speech" case, states: "Whatever imprecision inheres in these terms, we think it

clear that a government regulation is sufficiently justified if . . . it furthers an important or substantial government interest". This same approach was applied in *United States v. Kuch,* supra, an exercise of religion case. *United States v. Kuch* states: "[C]laims of religious exemption will be honored unless a substantial state interest will be frustrated in a significant way."

 The power to define crimes is a legislative function. *State v. Allen,* 77 N.M. 433, 423 P.2d 867 (1967). The Legislature has prohibited the use and distribution of a variety of substances, except in limited situations, in the Controlled Substances Act. Sections 30–31–1, et seq., N.M.S.A.1978. Among the substances prohibited is marijuana, §§ 30–31–22 and 30–31–23, supra. Generally speaking, the legal use of marijuana is limited to specified research, and that research is regulated. Sections 26–2A–1 through 7, N.M.S.A.1978 (Supp.1978). As a part of the regulation of marijuana, the Legislature classified it as an hallucinogenic substance. Section 30–31–6(C), N.M. S.A.1978 (Supp.1978).

 The State introduced no evidence to rebut the defense evidence concerning the free exercise defense. There may be cases where the absence of evidence by the State may be determinative of the State's "compelling interest" position. Compare *Sherbert v. Verner,* supra. However, the absence of such evidence in this case does not aid defendant.

Here we have legislation comprehensively regulating the use and distribution of marijuana. This legislation reflects a legislative judgment that prohibition of the use and distribution of marijuana is a substantial interest of the State.

Defendant introduced evidence at trial to the effect that lots of people use marijuana. If the purpose of this evidence was an attempt to show the State's interest in regulating marijuana was less than substantial, that purpose was not served. It is the Legislature that determines whether certain conduct should be criminal, not the judiciary.

Defendant also introduced evidence that the effects of marijuana were reversible. There is no evidence, from any party, as to what those effects might be. *United States v. Kuch,* supra, refers to a study "noting that marihuana is known to distort perception of time and space, modify mood and impair judgment, which may result in unpredictable behavior". This is consistent with the legislative judgment that marijuana is an hallucinogenic substance. *Leary v. United States,* supra, states: "[I]t was not incumbent upon the Government to produce evidence to controvert the testimony of witnesses on the controversial question whether use of the drug is relatively harmless."

Our point is this: The legislative judgment that certain conduct is criminal, sufficiently establishes a compelling state interest in enforcing the particular criminal statute involved.

If the State's interest in enforcing the law prohibiting the use and distribution of marijuana is not enforced against defendant, would the State's interest be frustrated in any significant way? Yes. To exempt defendant from the applicable criminal law would be no slight exception. Such an exemption would permit anyone to violate the law by advancing the same claims made by defendant. The testimony elicited by defendant suggests there are many who would be "converted" to believe the use and distribution of marijuana was a gift from God. See *United States v. Kuch,* supra. The legislative regulation of marijuana would soon be a nullity.

How does defendant's interest balance against the compelling state interest to regulate marijuana when the State's interest would be frustrated by nonenforcement? The evidence is sparse; there is no evidence comparable to the evidence introduced by the Amish as to their interests in *Wisconsin v. Yoder,* supra. Defendant's evidence is that if denied the use and distribution of marijuana, he would be denied the use of a free gift from God. Compare the evidence in *People v. Mullins,* supra.

Under the balancing test, denying defendant this free gift would not be an un-

constitutional denial of the free exercise of religion even if defendant's belief were religious. *People v. Mullins,* supra; *People v. Werber,* supra. "[I]t is not a violation of his constitutional rights to forbid him, in the guise of his religion, to possess a drug which will produce hallucinatory symptoms". *State v. Bullard,* 267 N.C. 599, 148 S.E.2d 565 (1966).

This third inquiry, the balancing test, is to be determined by the court. *People v. Mullins,* supra.

*Sincerity of Belief*

A fourth inquiry concerning the exercise of religion defense is "whether the claimant holds his belief honestly and in good faith or whether he seeks to wear the mantle of religious immunity merely as a cloak for illegal activities." *People v. Woody,* supra. This issue is decided by the trier of facts. *United States v. Ballard,* supra; *People v. Werber,* supra. The decision is made on whatever evidence is at hand. *People v. Woody,* supra. Thus, this fourth inquiry, in contrast to the other three inquiries, may be an issue for the jury to decide.

When does this fourth inquiry become a jury issue? The evidentiary problem as to this fourth inquiry is similar to the evidentiary problem in connection with the defense of insanity at the time the offense was committed. Thus: 1) the trial court determines whether the evidence as to the sincerity of the religious belief is sufficient to permit the jury to consider it as a factual question; 2) if the trial court determines the evidence is sufficient to raise a factual issue, ordinarily "sincerity" is to be submitted to the jury for decision; 3) there may be instances, admittedly rare, where the evidence is so clear that the trial court may rule that the belief was sincere. See *State v. Murray,* 91 N.M. 154, 571 P.2d 421 (Ct.App.1977).

Although we have characterized the fourth inquiry as one of "sincerity", the issue, when it is to be decided by the jury, is whether defendant "holds his belief honestly and in good faith".

In this case, the fourth inquiry would have been a jury question because the evidence of "sincerity" was sufficient to raise a jury issue.

The transcript does not show on what basis the trial court refused all requested instructions concerning the exercise of religion defense. However, the instructions were properly refused because, under the evidence, defendant failed to show that his belief was religious and, therefore, failed to show that his conduct in using and distributing marijuana was religiously-grounded conduct. In addition, the instructions were properly refused because denial of the exercise of religion claim was proper under the balancing test.

The judgment and sentences of the trial court are affirmed.

IT IS SO ORDERED.

HENDLEY and WALTERS, JJ., concur.