**STATE of Minnesota, Respondent,**

v.

**Ariel Suzette PEDERSEN, Appellant.**

**No. A03–249.**

Court of Appeals of Minnesota.

May 18, 2004.

Randall D.B. Tigue, Randall Tigue Law Office, P.A., Minneapolis, MN, for appellant.

Considered and decided by STONEBURNER, Presiding Judge; HUDSON, Judge; and CRIPPEN, Judge.*

## OPINION

HUDSON, Judge.

On October 6, 2000, a Chisago County sheriff stopped appellant, Ariel Suzette Pederson, for speeding. When the sheriff approached her car, he detected an odor of marijuana and a subsequent search of the car yielded 529.3 grams of marijuana. Chisago County charged appellant with felony possession of a controlled substance crime in the fifth degree, and possession of marijuana in a motor vehicle. Appellant moved to dismiss the criminal complaint, arguing, among other things, that the laws prohibiting the possession of marijuana as applied to her are unconstitutional because they violate her rights under the Freedom of Conscience Clause of the Minnesota Constitution. The district court denied her motion, concluding that appellant's beliefs about marijuana use are personal beliefs as opposed to communal religious beliefs. Following a bench trial, appellant was convicted of felony controlled substance crime in the fifth degree. The trial court sentenced appellant to an indeterminate period of probation not to exceed five years on the condition that she refrain from the use or possession of marijuana. On appeal, appellant argues that the district court erred by denying her motion to dismiss. Because we conclude that appellant's beliefs about marijuana use are per-

Mike Hatch, Attorney General, St. Paul, MN, and Katherine M. Johnson, Chisago County Attorney, Daniel R. Vlieger, Assistant County Attorney, Center City, MN, for respondent.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

sonal beliefs rather than communal religious practices or tenets, we affirm.

## FACTS

The parties do not dispute the underlying facts of this case. On October 6, 2000, Chisago County Sheriff Deputy Doug Henning stopped appellant, Ariel Suzette Pedersen, for speeding. When Henning approached appellant's vehicle he detected an odor of marijuana coming from the vehicle. He asked appellant if she had any marijuana and she admitted "yes, a little." During a search of the vehicle the sheriff discovered 529.3 grams of marijuana. Chisago County charged appellant with felony possession of a controlled substance crime in the fifth degree under Minn.Stat. § 152.025, subd. 2(1) (2000), and possession of marijuana in a motor vehicle under Minn.Stat. § 152.027, subd. 3 (2000).

On September 12, 2001, appellant filed a motion to dismiss the criminal complaint contending that the criminal statutes under which the county was prosecuting her were unconstitutional as applied to her because they violated the Freedom of Conscience Clause of the Minnesota Constitution, article I, section 16. Additionally, appellant argued that any penalty that deprived her of marijuana would constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution and article I, section 5, of the Minnesota Constitution.

At the omnibus hearing on appellant's motion, Dr. John Paul Morgan, a physician who examined appellant's medical records, testified that appellant suffers from a mixed connective tissue disorder called Raynaud's Phenomena. The condition causes swelling and pain in the hands and fingers. Dr. Morgan testified that appellant suffers nausea, gastric upsets, depression of her appetite, and occasional muscle spasms because of her use of prescribed opioid compounds and perhaps the underlying illness. Appellant has been treated with a variety of anti-inflammatory drugs and orally active opioid compounds. Nevertheless, appellant testified that she is usually so nauseated that she vomits seven to eight times a day and that on a good day she will only vomit once or twice. Appellant testified that she smokes two to three marijuana cigarettes a day, and that the marijuana stops the nausea and gives her an appetite. She testified that the marijuana also stops her muscle spasms.

Dr. Morgan likewise testified that appellant's use of marijuana helped achieve pain relief and helped with the "dyspeptic upper GI symptoms; her loss of appetite and her loss of weight." Dr. Morgan testified that marijuana is the best remedy for appellant. He also testified that there are other remedies, including Marinol, an FDA-approved drug that is accepted by the American Medical Association and is prescribed for the relief of nausea. Marinol contains THC, which is the active ingredient in marijuana. But Dr. Morgan acknowledged that Marinol is not as effective as marijuana because Marinol, which is taken orally, is rapidly degraded by the liver and little of the THC reaches the blood stream. Appellant testified that Marinol helps with spasms and increases her appetite, but she stated that she throws up her Marinol because of the nausea.

With respect to her religious beliefs, appellant testified that she graduated in 1997 from the Ministry Training Institute in Los Angeles, California, and described herself as "a teacher essentially of ministry studies." Appellant testified that her medicinal use of marijuana is consistent with her religious belief as a Messianic Jew; appellant cited various biblical passages to support this contention. Appel-

lant stated that the book of Genesis instructs that "God gives us every plant bearing seeds inside itself for our consumption and for our health." Genesis 1:11–12, 29; 9:3. Appellant stated that Messianic Jews have been using cannabis since the beginning of time for incense and oils and medicinal purposes. Appellant testified that in the book of Exodus the Bible authorizes the use of cannabis for medicinal purposes. According to appellant, "God was explaining to Moses all the ingredients to put into the incense for the temple. Within this confinement of the five ingredients was sweet cane. Sweet cane is cannabis in Hebrew, meaning scented reed or sweet smelling reed."

Reverend Karl Dean Buchanan also testified on appellant's behalf. Reverend Buchanan has been ordained into the Baptist Missionary Ministry. He is also a teacher at the church of MidVar Metzarim and has taken approximately 16 credit hours of Essenic studies, which is the study of the Jewish sect responsible for the Dead Sea Scrolls.[1] Reverend Buchanan testified that the medicinal use of marijuana is consistent with the teachings of Essenic Judaism and Messianic Judaism.

The district court denied appellant's motion to dismiss, finding that the use of marijuana was not truly connected with her religious beliefs; rather it was a personal preference. The case was tried to the court on stipulated facts, pursuant to *State v. Lothenbach,* 296 N.W.2d 854 (Minn.1980), and appellant was convicted of felony controlled substance crime in the fifth degree. The trial court sentenced appellant to an indeterminate period of probation not to exceed five years on the condition that she refrain from the use or possession of marijuana. This appeal follows.

## ISSUES

I. Did the district court err in finding that the controlled substance laws prohibiting appellant from possessing and using marijuana do not violate the Freedom of Conscience Clause of the Minnesota Constitution, article I, section 16?

II. Did the district court err by concluding that denying appellant access to marijuana as a criminal penalty does not constitute cruel or unusual punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution, and article I, section 5, of the Minnesota Constitution?

## ANALYSIS

### I

■ Appellant argues that the controlled substance laws prohibiting the possession and use of marijuana violate her rights under article I, section 16, of the Freedom of Conscience Clause of the Minnesota Constitution.

■ In reviewing constitutional challenges, the interpretation of statutes is a question of law. *State v. Manning,* 532 N.W.2d 244, 247 (Minn.App.1995), *review denied* (Minn. July 20, 1995). The constitutionality of a statute presents a question of law that the court reviews de novo.

---

1. In general, scholars of the Hebrew Bible (known to Christians as the Old Testament) indicate that the Essenes shared marked similarities with the Pharisees, but were even stricter in their legalism. As a result, they withdrew from public life to form strict ascetic communities where they could practice the Law without compromise. It is believed that between 150 B.C. and 70 A.D. they wrote and/or collected the Dead Sea Scrolls—a wealth of biblical and nonbiblical documents critical to the history of the development of the text of the Hebrew Bible. Norman K. Gottwald, *The Hebrew Bible, A Socio–Literary Introduction,* 88, 446–47 (Fortress Press 1985).

*State v. Wright,* 588 N.W.2d 166, 168 (Minn.App.1998), *review denied* (Minn. Feb. 24, 1999).

■ Article I, section 16, provides "[t]he right of every man to worship God according to the dictates of his own conscience shall never be infringed ... nor shall any control of or interference with the rights of conscience be permitted." Minn. Const., art. I, § 16. "To excuse an imposition on religious freedom under the Minnesota Constitution, the government's interest must be one of peace or safety or an interest against an act of licentiousness." *Murphy v. Murphy,* 574 N.W.2d 77, 81 (Minn.App.1998). "Only religious practices that are licentious or inconsistent with peace or safety are denied an exemption." *Id.* (citing *State by Cooper v. French,* 460 N.W.2d 2, 9 (Minn.1990)).

In *Employment Div., Dep't of Human Res. of Oregon v. Smith,* the United States Supreme Court held that a law of general application, which does not intend to regulate religious beliefs or conduct, is not invalid notwithstanding the incidental impact it has on an individual's religious beliefs. 494 U.S. 872, 876–82, 110 S.Ct. 1595, 1599–1602, 108 L.Ed.2d 876 (1990). The court observed: "[c]onscientious scruples have not, in the course of the long struggle for religious toleration, relieved the individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs...." *Id.* at 879, 110 S.Ct. at 1600 (quoting *Minersville Sch. Dist. Bd. of Educ. v. Gobitis,* 310 U.S. 586, 594–95, 60 S.Ct. 1010, 1012–13, 84 L.Ed. 1375 (1940)). Thus, the court in *Smith* rejected the compelling-state-interest test adopted

in *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), and held, unequivocally, that neutral laws of general applicability are not subject to free-exercise challenges. *Smith,* 494 U.S. at 884–90, 110 S.Ct. at 1603–06.

■ But the Minnesota Supreme Court has interpreted the Freedom of Conscience Clause to afford greater protection than the Free Exercise Clause of the United States Constitution. *See State v. Hershberger,* 462 N.W.2d 393, 397–98 (Minn.1990). Thus, in *Hershberger,* the court explained that the language in the Minnesota Constitution "is of a distinctively stronger character than the federal counterpart." *Id.* at 397. Accordingly, the court instructed that in order to determine whether an individual's rights under the Freedom of Conscience Clause are violated, the compelling-state-interest test articulates the standard to apply. *Id.* at 398. Therefore, "once a claimant has demonstrated a sincere religious belief intended to be protected by section 16, the state should be required to demonstrate that public safety cannot be achieved by proposed alternative means." *Id.*[2]

Accordingly, under *Hershberger,* we must first determine whether appellant's medicinal use of marijuana is a sincerely held religious belief intended to be protected by section 16. Appellant argues that the medicinal use of marijuana is consistent with her sincerely held religious beliefs as a Messianic Jew. The district court, however, concluded that appellant's beliefs in connection with the use of marijuana are personal beliefs, based on a personal, rath-

---

**2.** Similarly, we note that in 1993, Congress quickly repudiated *Smith* and revived the balancing test set forth in *Yoder* by passing the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq. (RFRA). Under the RFRA, which tracks First Amendment jurisprudence, government may substantially burden a per-

son's exercise of religion only if it demonstrates that the burden (i.e., the law at issue): (1) furthers a compelling governmental interest; and (2) is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb–1(b)(1)–(2); *United States v. Meyers,* 906 F.Supp. 1494, 1498 (D.Wyo.1995).

er than communal, interpretation of religious significance. We agree.

Whether the medicinal use of marijuana is a sincerely held religious belief entitled to protection under the Freedom of Conscience Clause appears to be an issue of first impression for this court. Many courts before us, however, have attempted to take on the task of defining what constitutes a sincerely held religious belief. Almost uniformly these courts have acknowledged that establishing such a definition is a delicate and difficult task. *See, e.g., Wisconsin v. Yoder*, 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972) ("a determination of what is a 'religious' belief or practice entitled to constitutional protection may present a most delicate question"); *Wiggins v. Sargent*, 753 F.2d 663, 666 (8th Cir.1985) (noting a court must take a cautious approach to make the extremely delicate determination of whether a purported belief is religious); *Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir.1981) ("when an individual invokes the first amendment to shield himself or herself from otherwise legitimate state regulation, we are required to make such uneasy differentiations"); *Stevens v. Berger*, 428 F.Supp. 896, 899 (E.D.N.Y.1977) (noting that determining what is a religious belief is a "difficult and sensitive factfinding task").

When making this difficult determination, however, there are some overarching principles that guide us. In *United States v. Ballard*, the United States Supreme Court declared that courts may not consider whether the party's purportedly religious beliefs are true or false. 322 U.S. 78, 86–88, 64 S.Ct. 882, 886–87, 88 L.Ed. 1148 (1944). The court in *Ballard* added that "[t]he First Amendment does not select any one group or any one type of religion for preferred treatment. It puts them all in that position." *Id.* at 87, 64

S.Ct. at 887. In *Yoder*, the United States Supreme Court explained:

> Although a determination of what is a "religious" belief or practice entitled to constitutional protection may present a most delicate question, the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests. Thus, if the Amish asserted their claims because of their subjective evaluation and rejection of the contemporary secular values accepted by the majority, much as Thoreau rejected the social values of his time and isolated himself . . ., their claims would not rest on a religious basis. Thoreau's choice was philosophical and personal rather than religious, and such belief does not rise to the demands of the Religion Clauses.

406 U.S. at 215–16, 92 S.Ct. at 1533 (footnote omitted).

Furthermore, in *Thomas v. Review Bd. of Indiana Employment Sec.*, 450 U.S. 707, 714, 101 S.Ct. 1425, 1430, 67 L.Ed.2d 624 (1981), the United States Supreme Court held that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." And if there is any doubt about whether a particular set of beliefs constitutes a religion, the court will err on the side of freedom and find that the beliefs are a religion. *United States v. Meyers*, 906 F.Supp. 1494, 1499 (D.Wyo.1995).

Also instructive, and factually similar, is *State v. Brashear*, 92 N.M. 622, 593 P.2d 63 (Ct.App.1979). In *Brashear*, the defendant argued that he used the Bible as his guide and concluded that God gave man every herb-bearing seed, including marijuana, and depriving him of marijuana would deprive him of a blessing coming from God. *Brashear*, 593 P.2d at 66. The

court held that appellant's conduct of smoking marijuana was not based on his sincerely held religious belief; rather his belief in the use and distribution of marijuana was based on his personal interpretation of the Bible. *Id.* at 68. The court engaged in a thorough analysis of what constitutes a religious belief and acknowledged that definitions of religious practice and conduct are difficult. *Id.* But the court determined that defendant's belief as to the use and distribution of marijuana was not a sincerely held religious belief because

> [t]here [was] no evidence that defendant's belief was espoused by any organization or was a principle, tenet, or dogma of any organization of which he was a member. There [was] no evidence that defendant's belief encompasses marijuana as an object of worship or that the use and distribution of marijuana except in limited ways would be sacrilegious. There [was] no evidence that defendant uses marijuana to communicate with any Supreme Being; no evidence that defendant's use or distribution in any way involves any religious ceremony; no evidence that the use or distribution involves any principle, tenet, or dogma pertaining to the spiritual or eternal, and, thus, nonsecular.

*Id.; see also People v. Mitchell,* 244 Cal. App.2d 176, 52 Cal.Rptr. 884, 888 (1966) (stating that "defendant has offered no evidence that his use of marijuana is a religious practice in any sense of that term. In defendant's discourse to the jury he did refer to the Bible and to the practices of some Hindus, but in essence he was expressing only his own personal philosophy and way of life").

Further, in *Meyers,* the court rejected the defendant's claim that his belief in "The Church of Marijuana" was a bona fide religion for purposes of the Religious Freedom Restoration Act (RFRA) of 1993. *Meyers,* 906 F.Supp. at 1502–09. In so doing, the court conducted a comprehensive survey of cases that have addressed what constitutes a religious belief. *Id.* Evaluating the plaintiff's contention that he possessed a sincere religious belief in smoking marijuana, the court reviewed, among others, the following factors: (1) *Ultimate Ideas*—whether the beliefs in question address fundamental questions about life, purpose, and death; (2) *Metaphysical Beliefs*—whether the beliefs in question address a reality which transcends the physical and immediately apparent world; (3) *Moral or Ethical System*—whether the beliefs in question prescribe certain acts in normative terms, such a "right" and "wrong"; (4) *Comprehensiveness of Beliefs*—whether the beliefs in question provide the believer with answers to many problems that confront humans; and (5) *Accoutrements of Religion*—whether the beliefs in question are accompanied by other established components of religion, such as important writings (e.g., creeds, tenets, precepts); gathering places (e.g., temples, churches, synagogues); or ceremonies and rituals. *Id.* at 1502–03. After reviewing these criteria, the court concluded that Meyer's beliefs were more aptly characterized as medical, therapeutic, and social, and were secular in nature. *Id.* at 1505–09.

Here, to support her contention that the medicinal use of marijuana is consistent with her sincerely held religious belief, appellant cites Bible verses, similar to the verses discussed in *Brashear.* She states that the book of Genesis instructs that "God gives us every plant bearing seeds inside itself for our consumption and for our health." Additionally, she explains that Messianic Jews have been using cannabis since the beginning of time for incense and oils and medicinal purposes.

Appellant testified that in the book of Exodus the Bible authorizes the use of cannabis for medicinal purposes, testifying that: "God was explaining to Moses all the ingredients to put into the incense for the temple. Within this confinement of the five ingredients was sweet cane. Sweet cane is cannabis in Hebrew, meaning scented reed or sweet smelling reed." Further, appellant's expert testified that the medicinal use of marijuana is consistent with the teachings of Essenic Judaism and Messianic Judaism. He stated that the use of marijuana is entirely kosher within Jewish law, meaning there is no argument against using marijuana for medicinal purposes. Additionally, he testified that the Bible passages cited by appellant do state that cannabis was used as an oil and was a highly esteemed trade.

But appellant's testimony in support of her purported religious belief did not address three of the *Meyers* criteria—ultimate ideas, metaphysical beliefs, and comprehensiveness of beliefs; and only generally addressed the moral or ethical dimension of her belief and its purported scriptural foundation. And, as in *Brashear* and *Mitchell,* appellant failed to provide the court with any evidence that her medicinal use of marijuana involves a religious ceremony, a principle, tenet, or dogma pertaining to the spiritual or eternal, or that she uses marijuana to communicate with any supreme being. Moreover, even if we accept appellant's assertion that in the book of Exodus sweet cane refers to cannabis, this is the sole Biblical text cited by appellant that makes any reference to the use of marijuana for medicinal purposes. More importantly, other than citing this one verse, appellant fails to demonstrate how her medicinal use of marijuana is supported or advocated by Essenic or Messianic Judaism in

the context of their fundamental tenets, precepts, scriptures or rites. Appellant's isolated and anecdotal citations to scriptures generally extolling the virtues of plant life are insufficient to prove that her medicinal use of marijuana is a communal religious belief. Likewise, Reverend Buchanan's general statement that the medicinal use of marijuana is consistent with the teachings of Essenic Judaism and Messianic Judaism is unsupported by any evidence in the record.

While we acknowledge that appellant is not required to prove that her use of marijuana meets all of the criteria set forth in *Meyers, Brashear,* and *Mitchell,* it is necessary that her use of marijuana be somehow tied to her religion and the established practices and beliefs within her religion. Here, appellant has failed to provide any evidence that establishes a connection between the practice of her religion and the medicinal use of marijuana. In our view, her belief in the medicinal use of marijuana is a personal, secular belief, driven more by her medical needs than any philosophical principle or religious tenet. As the *Meyers* court noted: "[t]hough the [marijuana] plant apparently has cured Meyers' manic depression and keeps him calm, this therapeutic effect is not religious. The marijuana plant does not provide Meyers with the comprehensive inspiration or guidance that the godheads of other religions provide to their followers." *Meyers,* 906 F.Supp. at 1506. The same is true for appellant here. In like fashion, the marijuana plant provides appellant with significant relief from her illness, but this therapeutic effect is not religious. Thus, we conclude that appellant's medicinal use of marijuana is not a sincerely held religious belief.[3]

Because we conclude that appellant did not have a sincerely held religious belief in

**3.** Pursuant to Minn. R. Civ.App. P. 128.05, subsequent to oral argument, appellant

brought to our attention the Eighth Circuit's decision in *McCarthy v. Ozark Sch. Dist.,* 359

the medicinal use of marijuana, we need not reach respondent's argument that the government has a compelling public safety interest sufficient to defeat appellant's claim. We take this opportunity to note, however, that the state's sole reliance on the legislature's enactment of statutes prohibiting the possession of marijuana to defeat a claim under article I, section 16, is plainly inadequate under *Hershberger*. *See* 462 N.W.2d at 398. Although the state obviously has a compelling public safety interest in enforcing the controlled substance laws, the state failed to provide any evidence that its compelling interest in public safety could not be achieved by less restrictive means.[4]

## II

■ The trial court sentenced appellant to an indeterminate period of probation

not to exceed five years on the condition that she refrain from the use or possession of marijuana. Appellant argues that this sentence constitutes cruel and unusual punishment in violation of article I, section 5, of the Minnesota Constitution and the Eighth Amendment of the United States Constitution.

■ The Minnesota Constitution provides that no person may be subject to "cruel or unusual punishment." Minn. Const. art. I, § 5; *see also* U.S. Const. amend. VIII (prohibiting "cruel and unusual punishment"); *State v. Mitchell*, 577 N.W.2d 481, 488 (Minn.1998) (recognizing the Minnesota Constitution provides a defendant with greater protection than the United States Constitution). To determine whether a sentence is unconstitutional, we consider whether the punishment is

F.3d 1029 (8th Cir.2004). In *McCarthy*, schoolchildren challenged an Arkansas statute that required immunization of children against hepatitis B. *Id.* at 1032. The district court determined that the statute violated the Establishment Clause of the First Amendment because an exemption to the statute only applied to the religious tenets of an organized church or a religious denomination. *Id.* The Eighth Circuit determined that the case was moot because after the district court's decision the Arkansas legislature amended the exemption making it applicable to religious or philosophical beliefs. *Id.* at 1035–37. Appellant contends that *McCarthy* recognized that a religious liberty exemption from a general law must include not only adherence to a recognized religion but persons having fundamental religious or philosophical objections to the law. We conclude, however, that *McCarthy* does not alter our analysis in this case for three reasons. First, for purposes of its analysis, the Eighth Circuit assumed that the appellants in *McCarthy* had a sincerely held religious belief, and therefore, analyzed the alleged beliefs. *Id.* Here, we cannot assume that Pedersen had a sincerely held religious belief because that determination is a threshold issue in this case. Second, neither the district court nor the Eighth Circuit analyzed *McCarthy* under the Free Exercise

Clause of the United States Constitution. *Id.* Thus, the holding in *McCarthy* is not on point in this case, which is based on a violation of the Minnesota Constitution's Freedom of Conscience Clause, the companion clause to the Free Exercise Clause of the United States Constitution. Lastly, as alluded to earlier in this opinion, we agree that appellant need not prove that her sincerely held religious belief is based on the tenets of an organized religion, but the belief must be based on some communal belief system pertaining to the spiritual or eternal. We conclude that from the record in this case, appellant has failed to meet this burden.

4. For example, in *Hershberger*, which involved the constitutionality of Minn.Stat. § 169.522, requiring slow-moving vehicles to display a fluorescent orange-red triangular sign emblem when being operated on public highways, the court held that the Amish had demonstrated a sincerely held religious belief, and that the state law interfered with that belief. *Id.* at 399. The court further held that the state failed to meet its burden to establish that the state's interest in public safety could not be achieved by less restrictive means, such as the use of white reflective tape and a lighted red lantern. *Id.*

proportional to the crime. *Mitchell,* 577 N.W.2d at 489. But because statutes are presumed constitutional, the defendant bears the burden of showing that " 'our culture and laws emphatically and well nigh universally reject' " the sentence the defendant is claiming is cruel or unusual. *State v. Chambers,* 589 N.W.2d 466, 479–80 (Minn.1999) (quoting *Harris v. Wright,* 93 F.3d 581, 583 (9th Cir.1996)).

Here, the trial court could not (nor can this court) provide the relief appellant requests. We are not unsympathetic to appellant's plight. But appellant urges this court to sanction her continued illegal use of marijuana; this we cannot do. Appellant's cause is one more appropriately addressed to the Minnesota legislature.

Moreover, appellant's sentence to probation is not disproportionate to her crime. The statute allows the court to sentence appellant to up to five years in prison; the court sentenced appellant to a standard probationary period. Minn.Stat. § 152.025, subd. 3(a). This sentence is presumed constitutional and appellant has not presented any evidence to prove that our laws and culture reject such a sentence for possession of a Schedule I drug.

Appellant argues that unless she is allowed to smoke marijuana, she will continue to suffer from nausea, her weight will continue to drop, and her life will be in jeopardy. But the facts do not support appellant's claim. It is clear from the record that appellant's disorders are not fatal, and that there are other remedies available to treat appellant's condition—it is just that marijuana is the most effective remedy.[5] Specifically, appellant has been prescribed Marinol, the FDA-approved prescription that contains the active ingredient in marijuana, namely THC. As re-

spondent correctly notes, Marinol may not be as efficient or effective as smoked marijuana, but it is available and it is legal.

### DECISION

We affirm the district court's decision that appellant does not have a sincerely held religious belief in the medicinal use of marijuana, because appellant failed to articulate a connection between her use of marijuana and the practices or central tenets of her religion. Further, we affirm the district court's sentence of probation on the condition that appellant refrain from using marijuana, because appellant's sentence to a period of probation is not disproportionate to her crime.

**Affirmed.**

---

5.  Moreover, Dr. Morgan testified that he never personally examined appellant, never weighed her, and that the weight of 110

pounds on a five-foot-tall female is not life threatening.